**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAMES E. BEDEKER, SALLY BEDEKER )
and FIRST MIDWEST TRUST COMPANY, )
Trustee Under Trust # 6243 dated )
December 18, 1997, )
                                        ) No. 08 C 1711
               Plaintiffs, )
v. ) Judge Andersen
                                        )
UNITED STATES OF AMERICA, ) Magistrate Judge Nolan
CHARLES F. CONNOR, ACTING SECRETARY )
OF THE UNITED STATES DEPARTMENT OF )
AGRICULTURE, FARM SERVICE AGENCY, )
NATURAL RESOURCES CONSERVATION )
SERVICE, AND THE UNITED STATES )
DEPARTMENT OF AGRICULTURE, )
                                        )
               Defendant. )

## AGREED MOTION TO CONSOLIDATE

Plaintiffs, James E. Bedeker, Sally Bedeker and First Midwest Trust Company as Trustee

under Trust No. 6243 dated December 18, 1997 files this their Motion to Consolidate pursuant to

Rule 42(a) of the Federal Rules of Civil Procedure and in support thereof states as follows:

## I.

## INTRODUCTION

This case involves the judicial review of a determination made by the National Appeals

Division of the United States Department of Agriculture ("Agency") relating to alleged wetland

violations on Plaintiff's property. Plaintiffs have also filed a separate action challenging another

decision of the Agency. One judicial challenge involves whether the area is a wetland. That

case was assigned case number 07 C 6014. (A copy of the Complaint is attached hereto as

Exhibit A.)  This case relates to the Plaintiffs' request for a good faith finding and equitable

relief under the same facts and circumstances.  (A copy of the Complaint is attached hereto as Exhibit B.)

Although involving separate Agency determinations, the parties' property and many of the facts involved are the same and both cases involve common questions of law or fact.  By this motion, Plaintiffs seek to consolidate the actions, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

## II.

## ARGUMENT FOR CONSOLIDATION

1.    On October 24, 2007, Plaintiffs filed 07 C 6014 James Bedeker, et al. v. United States of America, et al. which seeks judicial review of the Agency's determination that a wetland exists on Plaintiffs' farm located in Morris, Illinois.  That matter has been continued and no substantive rulings have been entered.  Counsel advised Judge Pallmeyer of the separate Agency determination and counsel's intent to file for judicial review of that determination and seek consolidation.

2.    On March 20, 2008, Plaintiffs filed 08 C 1711 James Bedeker, et al. v. United States of America, et al. requesting judicial review of the Agency's decision to deny the Plaintiffs' request for good faith and equitable relief related to the same property involved in 07 C 6014.

3.    Although both cases involve a separate administrative determinations, it would be in the interest of judicial economy to consolidate the two cases for hearing.  Both cases involve the same parties, property and share common facts and question of law.

4.    Counsel for Plaintiffs has also been advised by Assistant United States Attorney Jonathan C. Haile that defendants have no objection to this motion and agree to the consolidation of the actions.

## III.

## CONCLUSION

As the cases involve the same parties, property, facts and law, consolidation is proper under Rule 42(a).

WHEREFORE, Plaintiffs, James Bedeker and Sally Bedeker and First Midwest Trust Company as Trustee under Trust No. 6243 respectfully request that this Court grant their motion and consolidate this matter, 08 C 1711, with 07 C 6014 and grant such further and other relief as this Court deems just and proper.

> JAMES AND SALLY BEDEKER, AND
> FIRST MIDWEST TRUST COMPANY
> TRUST #6243 dated December 18, 1997
>
>
> /s/ Timothy J. McGonegle

Timothy J. McGonegle (ARDC #1840797)
Patrick T. Brankin (ARDC #6228896)
SCHAIN, BURNEY, ROSS & CITRON, LTD.
222 North LaSalle Street, Suite 1910
Chicago, Illinois 60601
(312) 332-0200 (phone)
(312) 332-4514 (fax)

F:\PTB\Bedeker\Declaratory-Judgment-Injunction\Plaintiff's-Motion-to-Consolidate.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES E. BEDEKER, SALLY BEDEKER )
and FIRST MIDWEST TRUST COMPANY, )
Trustee Under Trust # 6243 dated )
December 18, 1997, )
)                    No. **07C  6014**
            Plaintiffs, )
v. )
)
UNITED STATES OF AMERICA, )
CHARLES F. CONNOR, ACTING SECRETARY )                    JUDGE PALLMEYER
OF THE UNITED STATES DEPARTMENT OF )
AGRICULTURE, FARM SERVICE AGENCY, )
NATURAL RESOURCES CONSERVATION )
SERVICE, AND THE UNITED STATES )                    MAGISTRATE JUDGE SCHENKIER
DEPARTMENT OF AGRICULTURE, )
)
            Defendant. )

## COMPLAINT FOR DECLARATORY JUDGMENT,
## INJUNCTION AND OTHER RELIEF

Plaintiffs, James E. Bedeker, Sally Bedeker and First Midwest Trust Company,

Trustee Under Trust #6243 dated December 18, 1997, (the "Bedekers") by and through

their attorneys, Schain, Burney, Ross & Citron, Ltd., for their Complaint for Declaratory

Judgment, Injunction and Other Relief against Defendants, United States of America,

Charles F. Connor, Acting Secretary of the United States Department of Agriculture,

Farm Service Agency, Natural Resources Conservation Service, and the United States

Department of Agriculture ("Agencies"), state as follows:

1.       This is an action seeking judicial review of the final determination of the

National Appeals Division ("NAD") of the United States Department of Agriculture

("USDA") adverse to the Bedekers that their farmland contained converted wetlands



EXHIBIT

and which found the Bedekers ineligible to receive farm program benefits retroactive to 1998.

## THE PARTIES

2.     Plaintiffs, James E. Bedeker and Sally Bedeker are citizens of the State of Illinois residing in Grundy County, Illinois and are beneficiaries of the land trust which holds title to certain farmland located in Grundy County, Illinois.

3.     First Midwest Trust Company, is a national association with its principal place of business in Joliet, Illinois.  It is Trustee Under Trust #6243 dated December 18, 1997 and the legal title holder to the farmland which is the subject matter of this action.

4.     Defendant, Charles F. Connor is the Acting Secretary of the United States Department of Agriculture, having been sworn in as Deputy Secretary of Agriculture on May 2, 2005.

5.     Defendant, Farm Service Agency ("FSA") and the Natural Resource Conservation Service ("NRCS") (collectively referred to as the "Agencies") are branches of the United States Department of Agriculture.

6.     Defendant, the United States Department of Agriculture ("USDA") is a division of the federal government of the United States of America charged with implementing the Acts of Congress in the agricultural industry.

## JURISDICTION

7.     This Court has jurisdiction of this matter under 7 U.S.C. § 6999 which provides for judicial review of the final determination of the National Appeals Division Director by any United States District Court of competent jurisdiction.  Jurisdiction also exists under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-06, which provides for judicial review of final agency action adverse to a party.

8.    This Court is a court of competent jurisdiction because the Bedekers reside in the Northern District of Illinois, Eastern Division and the farmland that is the subject of the Director's final determination is similarly located within the Northern District of Illinois, Eastern Division.

## VENUE

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because the Bedekers reside in the Northern District of Illinois, Eastern Division and the Property involved is within the bounds of the Northern District of Illinois, Eastern Division.  28 U.S.C. § 1391(e)(3).

## STATEMENT OF FACTS

10.    In or about 1998 the Bedekers acquired approximately 600 acres of farmland in Grundy County, Illinois.  The area at issue in this action is identified by the USDA as Farm Serial Number 3103 ("FSN 3103"), and Tract 2663 ("Tract") and comprises approximately 8.5 acres of the 600 acre farm.

11.    From 1998 to 2006, the Bedekers received farm program benefits from the USDA under various programs, as part of their farm operations.

12.    The USDA has the responsibility for implementing the Food Security Act of 1985, 16 U.S.C. § § 3821-23; Pub. L. 99-198, Title XII, 99 Stat. 1504; as amended under the Food, Agriculture, Conservation, and Trade Act of 1990, Pub. L. 101-624; 104 Stat. 3359 (hereinafter the "Act").

13.     Under the Act, persons who violate certain provisions of the Act may become ineligible for government price support payments.  16 U.S.C. §§3801, 3821-24.

14.     The alleged activities in this case relate to an alleged conversion of a wetland on 8.5 acres of land on FN 3103, Tract 2663.  These 8.5 acres are part of the Bedekers' farm which in total consists of over 600 acres.

15.     The NRCS alleged a wetland conversion took place in 1998 by the removal of trees and stumps by the Bedekers.  The FSA upheld this determination by decision dated March 16, 2007.

16.     The Bedekers contest the underlying decision and the National Appeals Division ("NAD") ruling upholding the Agency's decision.

17.     The Bedekers contest that the area is a wetland.

18.     The Bedekers contest that any alleged manipulation had an effect on the wetland, thus exempting any alleged violation under the minimal effects defense. ( 7 C.F.R. et. seq.)

19.      It is undisputed that the Bedekers were given inaccurate information in 1998 by the Agency with regard to the Tract and it was not until 2006 that the Agency changed its view on the Tract and sought to recover payments dating back to 1998.

20.     The Agency did not make a formal wetland determination until 2006.

21.     On July 17, 2006, the Agency informed the Bedekers that their farm assistance privileges were revoked and that the Bedekers must repay their farm program benefits dating back to 1998 in the total amount of $485,965.44 plus interest and penalties.

22.    Thereafter, the Bedekers sought administrative relief on several grounds in order to reverse the NRCS's determination.

23.    The administrative procedures concluded on September 26, 2007, when the Deputy Director of the National Appeals Division ("NAD") of the Office of the Secretary of USDA issued its Director Review Determination which upheld the NAD Hearing Officer's July 10, 2007 Appeal Determination which denied the Bedeker's relief. (A true and correct copy of the Deputy Director's Review Determination is attached as Exhibit "A".) (A true and correct copy of the Hearing Officer's Appeal Determination is attached as Exhibit "B".)

24.    This Court's review of an agency action is governed by the Administrative Procedures Act, 5 U.S.C. §§ 702-706. (the "APA").

## COUNT I – ADMINISTRATIVE PROCEDURES ACT

25.    The Bedekers repeat and reallege paragraphs 1 through 24 as though fully set forth herein.

26.    For the reasons set forth in the record, including but not limited to the following, the September 26, 2007 determination of the Director of the NAD is arbitrary and capricious because (a) the Tract is not a wetland;  (b) the underlying decisions ignored and wrongfully interpreted the minimal effects defense; (c) the underlying decisions are based on admittedly wrong information provided by the Agency to the Bedekers; (d) there was no formal wetland determination until 2006, and (e) the Bedekers were denied their due process rights in the National Appeals Division hearing in that they were unable to fully question the Agency's witnesses.

WHEREFORE, Plaintiffs, James E. Bedeker, Sally Bedeker and First Midwest Trust Company, Trustee Under Trust #6243 dated December 18, 1997, respectfully request this Honorable Court to reverse the determination of the Director of the NAD, issue a finding that the Agency is not entitled to any refund of any farm program benefits; and order the reinstatement of the Bedekers' eligibility for farm program benefits and grant such further and other relief as is just and proper.

## COUNT II – PRELIMINARY INJUNCTION

27.    The Bedekers repeat and reallege paragraphs 1 through 26 as though fully set forth herein.

28.    The September 26, 2007 determination of the Director of the NAD is the final order of the USDA and concludes all administrative proceedings available to the Bedekers.

29.    7 U.S.C. § 7000 provides for implementation of any final determination of the NAD no later than thirty (30) days after the effective date of the notice of the final determination.

30.    On the return of a case to an agency pursuant to the final determination of the NAD, the head of the agency is empowered to implement the final determination not later than the 30-day period.

31.    By timely filing the instant action for judicial review prior to expiration of the 30-day period, the Bedekers seek reversal or remand of that determination and a stay of any enforcement proceedings pending the outcome before this Court.

32.    The Bedekers can demonstrate the probability of success on the merits of their claims entitling them to a preliminary injunction preventing the Secretary of Agriculture or any other USDA personnel from implementing the determination.

6

33.    The Bedekers can demonstrate a sufficient threat of irreparable harm. The USDA's demand for repayment of past farm program benefits and decertification of eligibility for future benefits is unreasonable and would cause an extreme level of harm if inflicted on the Bedekers.

34.    The Bedekers cannot be fully compensated by damages for the loss of the intangible value of their farming operation as a result of such disgorgement of past benefits or loss of future benefits.

35.    In balancing the harms, this Court must consider the balance between the harm to the Bedekers and the injury that the injunction's issuance would inflict on other interested parties and the public interest.

36.    The Bedekers alleged conversion of 8.5 acres of purported wetlands in a farming operation encompassing 600 acres is small, would have a minimal effect and may be subject to restoration.

37.    The public interest supports the issuance of an injunction in favor of the Bedekers.  The purposes and interests of the underlying legislation was intended to serve a preference for enjoining inequitable conduct and the public's interest in minimizing unnecessary costs to be met from public coffers.

38.    Even given the importance of preventing wetlands conversion, the issuance of a preliminary injunction would do nothing more than maintain the status quo, and thus would be appropriate and in line with public interest considerations.

WHEREFORE, Plaintiffs, James E. Bedeker, Sally Bedeker and First Midwest Trust Company, Trustee Under Trust # 6243 dated December 18, 1997 respectfully request this Honorable Court to issue a preliminary and eventual permanent injunction prohibiting the USDA, the Secretary and any personnel acting in his place or stead, from any implementation of the determination pending the ruling of this Court on the merits of Bedekers' Complaint and grant such further and other relief as is just and proper.

## COUNT III – DECLARATORY JUDGMENT

39.    Plaintiffs repeat and reallege paragraphs 1 through 38 as though fully set forth herein.

40.    The September 26, 2007 determination of the Director of the NAD was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; was in excess of his statutory jurisdiction, authority or limitations or short of statutory rights; was without observance of procedures required by law, and was unsupported by substantial evidence.

41.    For the reasons set forth in the record, including but not limited to the following, the September 26, 2007 determination of the Director of the NAD is arbitrary and capricious because (a) the area in question is not a wetland;  (b) the underlying decisions ignored and wrongfully interpreted the minimal effects defense; (c) the underlying decisions are based on admittedly wrong information provided by the Agency to the Bedekers; (d) there was no formal wetland determination until 2006, and (e) the Bedekers were denied their due process rights in the National Appeals Division hearing in that they were unable to fully question the Agency's witnesses.

8

WHEREFORE, Plaintiffs, James E. Bedeker, Sally Bedeker and First Midwest Trust Company, Trustee Under Trust #6243 dated December 18, 1997, respectfully request this Honorable Court to reverse the determination of the Director of the NAD, issue a finding that the Agency is not entitled to any refund of any farm program benefits; and order the reinstatement of the Bedeker's eligibility for farm program benefits and grant such further and other relief as is just and proper.

Respectfully submitted,

**JAMES AND SALLY BEDEKER, AND FIRST MIDWEST TRUST COMPANY TRUST #6243 dated December 18, 1997**

By: _____
One of Their Attorneys

Timothy J. McGonegle
Patrick T. Brankin
SCHAIN, BURNEY, ROSS & CITRON, LTD.
222 North LaSalle Street
Suite 1910
Chicago, IL 60601
(312) 332-0200 (phone)
(312) 332-4514 (fax)
\\Sbrcfs2\home\PTB\Bedeker\Complaint-USDA-10-22-07.rtf

9



*UNITED STATES DEPARTMENT OF AGRICULTURE*
*OFFICE OF THE SECRETARY*
*NATIONAL APPEALS DIVISION*
## DIRECTOR REVIEW DETERMINATION

|                      |   |                        |
|----------------------|---|------------------------|
| In the Matter of     | ) |                        |
|                      | ) |                        |
| JAMES E. BEDEKER     | ) | Case No. 2007E000453   |
| SALLY BEDEKER        | ) |                        |
| TRUST #6234          | ) |                        |
|                      | ) |                        |
| and                  | ) |                        |
|                      | ) |                        |
| FARM SERVICE AGENCY  | ) |                        |
|                      | ) |                        |
| and                  | ) |                        |
|                      | ) |                        |
| THIRD PARTY          | ) |                        |
| VIKING VENTURES CORP | ) |                        |

On July 24, 2007, James E. Bedeker (Appellant-1), Sally Bedeker (Appellant-2), and Trust #6243 (Appellant-3), collectively Appellants, filed a request for a Director Review of a National Appeals Division (NAD) Hearing Officer Determination issued on July 10, 2007. The Hearing Officer upheld a Farm Service Agency (FSA) adverse decision, dated March 16, 2007, which upheld a determination by the Natural Resources Conservation Service (NRCS) that Appellant's farmland, located on Farm Serial Number (FSN) 3103, Tract 2663, contained converted wetland (CW), and found Appellants ineligible to receive farm program benefits beginning with program year 1998 (PY 1998).

I uphold the Hearing Officer's determination. As discussed below, I find that the adverse decision is consistent with applicable laws and regulations and supported by substantial evidence. In arriving at this decision, I have reviewed the case record (CR), including the Hearing Officer's appeal determination, the hearing testimony, Appellant's request for review, and the response filed by NRCS.

### Issues in This Case

The dispute in this case is whether FSA classified 8.5 acres of Tract 2663 as CW in accordance with its regulations. To resolve the dispute, I must answer the following specific questions:

1.    Under normal circumstances, does Tract 2663 contain wetlands?

James E. Bedeker
Sally Bedeker
Trust #6243
Case No.2007E000453

2.    If so, did Appellants convert the wetlands on Tract 2663 after 1990 for the purposes of producing an agricultural commodity?

3.    Does converting wetlands render Appellants ineligible to receive farm program benefits if NRCS gave them incorrect advice in 1999?

### Legal Standards

Part 11 and Part 12 of Title 7 of the Code of Federal Regulations (C.F.R.) contain the controlling regulations.  The 1987 Corps of Engineers Wetland Delineation Manual (1987 Manual) provides procedures for wetland determinations mandated by Part 12.

Wetland is land that: (1) has a predominance of hydric soils; (2) is inundated or saturated by surface or ground water at a frequency and duration to support hydrophytic vegetation; and (3) supports hydrophytic vegetation under normal circumstances. 7 C.F.R. §12.2(a) (definition of wetland).  CW is wetland that has been drained, dredged, filled, leveled, or otherwise manipulated for the production or possible production of an agricultural commodity.  7 C.F.R. § 12.2(a) (definition of converted wetland).  Except as provided for in 7 C.F.R. § 12.5, a person shall be ineligible to receive United States Department of Agriculture (USDA) program benefits described in 7 C.F.R. § 12.4(d) or (e), if the person: (1) produces an agricultural commodity on a field in which highly erodible land is predominate; (2) produces an agricultural commodity on wetland that was converted after December 23, 1985; or (3) converts wetland after November 28, 1990 by manipulation for the purposes of producing an agricultural commodity.  7 C.F.R. § 12.4(a)(1)-(3).  No person shall be determined to be ineligible to receive farm program benefits because of CW if the wetland functions and values are adequately mitigated, as determined by NRCS, through the restoration of a CW.  7 C.F.R. § 12.5(b)(4)(i).

Certification of a wetland determination shall be completed according to delineation procedures agreed to by the Army Corps of Engineers, the Environmental Protection Agency (EPA), the U.S. Fish and Wildlife Service, and NRCS.  7 C.F.R. § 12.30(c)(1).  During an on-site investigation, NRCS shall identify hydric soils and hydrophytic vegetation and determine whether the land under normal circumstances supports a prevalence of hydrophytic vegetation.  7 C.F.R. § 12.31(a)(1), (b)(1), and (b)(2)(i).  For the purposes of CW exemptions, NRCS shall determine whether the effect of the conversion of wetland and the production of an agricultural commodity on the CW has a minimal effect on the functions and values of the wetland.  Such an assessment will be made through an on-site evaluation.  A request for the assessment will be made prior to the beginning of activities that would convert wetland.  If a person has converted wetland and then seeks an assessment, the burden will be upon the person to demonstrate to the

James E. Bedeker
Sally Bedeker
Trust #6243
Case No.2007E000453

3

satisfaction of NRCS that the effect was minimal. 7 C.F.R. § 12.31(d). During that investigation, if an atypical situation is detected in which the land has been altered by natural or human activity, it must be determined whether hydric soils, hydrophytic vegetation, and/or wetland hydrology were present prior to the alteration. 1987 Manual, Part IV, Section D, Subsection 2, Paragraph 65, Step 2, Page 52. To determine the type of vegetation that previously existed on altered land, all possible evidence should be obtained. Sources of evidence include aerial photographs, previous site inspections, and adjacent vegetation. 1987 Manual, Part IV, Section F, Subsection 1, Paragraph 73, Step 3a-h, Pages 74-75.

The Hearing Officer will conduct the NAD hearing in the manner most likely to obtain the relevant facts and will provide each party with the opportunity to question all witnesses. 7 C.F.R. § 11.8(c)(5)(ii). On appeal to NAD, the appellant bears the burden of proving by a preponderance of the evidence that the adverse decision of the agency was erroneous. 7 C.F.R. § 11.8(e).

### Background

I have reviewed the findings of fact (FOFs) contained in the Hearing Officer's Appeal Determination and find that all are supported by substantial evidence in the record. Therefore, I adopt them as my own. Upon review of the CR, I have made additional FOFs that are supported by substantial evidence in the record and are relevant to the dispute in this case. Citations to the CR follow each of these new findings. The following is a summary of the relevant facts.

On April 25, 1990, NRCS determined FSN 3103, Tract 2663, contained undisturbed wetlands. NRCS notified the former owner of Tract 2663 of its wetland determination by mail. (FOF 1; File 2, Tab 15, Pages 5, 20, and 227.) Appellants bought FSN 3103 in 1998. (FOF 2; File 2, Tab 15, Page 5.) On July 31, 1998, August 4, 1998, August 3, 1999, June 8, 2000, April 12, 2003, September 24, 2003, and July 15, 2005, Appellant-1 filed Form AD-1026, *Highly Erodible Land Conservation (HELC) and Wetland Conservation (WC) Certification,* with FSA on behalf of Appellants, certifying that they would comply with wetland conservation provisions for Tract 2663. (FOF 3, Pages 81-99 and 106-11; Hearing Testimony, Track 1, 3:00:46-3:01:31.) On December 21, 1998, FSA informed Appellants that it had determined that they had placed fill soil on the wetlands on Tract 2663 and had cleared trees and removed stumps from the wetlands. FSA advised Appellants that converting wetlands makes a person ineligible to receive farm program benefits and suggested that they stop work in the wetlands until the "issue can be resolved." (FOF 4; File 2, Tab 15, Pages 79 and 225-226.) On August 2, 1999, NRCS determined that Appellants had converted five acres of wetlands on Tract 2663. On August 3, 1999, NRCS informed FSA that Appellants had

James E. Bedeker
Sally Bedeker
Trust #6243
Case No.2007E000453

cleared trees and planted crops on the wetlands but had agreed to cease farming the
wetlands and to seed the wetlands with some permanent grass. NRCS also informed FSA
that, by taking the wetlands out of production and planting grass on the wetlands,
Appellants would be in compliance with wetland conservation provisions and remain
eligible to receive program benefits in 1999. (FOF 5; File 2, Tab 15, Pages 22, 74-75,
and 220-221; Hearing Testimony, Track 1, 1:55:00-1:55:20.)

On March 21, 2006, NRCS conducted a review of crops planted on Tract 2663 for the
years 1980, 1982, 1986, 1991, 1993, and 1996-2001. During the review, NRCS observed
that trees had been removed from the wetlands on Tract 2663 each year from 1997
through 2001. NRCS also determined that Appellants had converted 8.5 acres of
wetlands on Tract 2663, which NRCS designated as CW-1 (3.5 acres) and CW-2 (5.0
acres). (FOF 6; File 2, Tab 15, Pages 166-177; Hearing Testimony, Track 1, 00:34:24-
00:34:57.) On April 24, 2006, NRCS conducted a routine wetland determination for
Tract 2663. NRCS found wetland hydrology and hydric soil indicators were present on
the CW areas of the tract. NRCS also found that Appellant had removed vegetation
from, and planted crops on, the CW areas. Since the CW areas had been cleared and
planted, NRCS used a comparable, offsite location to determine that the natural
vegetation of the areas was hydrophytic vegetation. (FOF 7; File 2, Tab 15, Pages 179-
204.) On May 5, 2006, NRCS made a wetland determination that indicated Appellants
had converted 8.5 acres of wetlands on Tract 2663. NRCS also made a determination
that indicated Vikings Venture Corp (Third Party) had converted .4 acres of wetlands on
FSN 149, Tract 360. (FOF 8; File 2, Tab 15, Pages 13-15, 20-23, 116-140, and 159-164.)

On May 13, 2006, NRCS informed Appellants and Third Party that it had made a
preliminary technical determination that Tract 2663 and Tract 360 contained CW. (FOF
9; File 2, Tab 15, Pages 66-72.) On May 18, 2006, Appellants admitted to NRCS that
they had removed trees and stumps from Tract 2663. That same day, Third Party agreed
to restore the wetlands on Tract 360. (FOF 10; File 2, Tab 15, Pages 13, 21, and 217.)
On July 7, 2006, FSA notified Third Party that FSA had been informed by NRCS that a
wetland violation had occurred on Tract 360. FSA also notified Third Party that it was
ineligible to receive farm program benefits beginning with PY 2001. On July 13, 2006,
FSA notified Appellants that FSA had been informed by NRCS that a wetland violation
had occurred on Tract 2663 and that the violation was caused by the removal of trees and
stumps from the tract beginning in 1998. FSA also notified Appellants that they were
ineligible to receive program benefits beginning with PY 1998. (FOF 11; File 2, Tab 15,
Pages 57-72.) On August 11, 2006, Appellants requested a good faith determination.
Appellants asserted in their request that the CW areas of Tract 2633 had been improperly
designated as wetlands and that Appellants did not know that the tract contained
wetlands. Appellants also appealed the July 13, 2006 decision of FSA. The FSA county
committee (COC) scheduled Appellants' appeal hearing for November 2, 2006. (File 2,
Tab 15, Pages 32-42 and 47-50.)

James E. Bedeker
Sally Bedeker
Trust #6243
Case No. 2007E000453

On August 25, 2006, the COC determined that Third Party acted in good faith with regard to the wetland violation for Tract 360 and informed Third Party that its eligibility to receive farm program benefits could be restored if it entered into a wetland restoration plan with NRCS. The COC based its determination on the actions of Third Party's tenant, Appellant-1, in removing trees and stumps from Tract 360 without Third Party's knowledge and Third Party's willingness to restore the tract. (File 2, Tab 15, Pages 43-46.) On October 23, 2006, Third Party entered into a wetland restoration plan with NRCS to restore the wetlands on Tract 360. (FOF 13; File 2, Tab 15, Pages 14 and 144-158B.)

On November 2, 2006, Appellants submitted two letters to the COC from an environmental scientist (ES) hired by Appellants to conduct an on-site inspection of Tract 2663. In her letters, ES asserted that a wetland violation on Tract 2663 may not have occurred because the tract may not contain wetlands. ES also asserted that if such a violation had occurred on Tract 2663, it would have a minimal effect on adjacent wetlands. (FOF 14; File 2, Tab 15, Pages 28-30, Hearing Testimony, Track 1, 1:52:40-1:52:43.) On November 15, 2006, the COC tabled Appellant's appeal and requested that the NRCS State Conservationist review the NRCS technical determination that Tract 2663 contained CW. The COC specifically wanted to know how the 1999 CW determination was handled, because NRCS had erroneously informed FSA that Appellants would remain in compliance with wetland conservation provisions if they ceased converting and cropping the wetlands on Tract 2663. (File 2, Tab 15, Pages 27-24.)

On January 17, 2007, the NRCS State Conservationist issued a report in which he agreed with the technical determination of NRCS that Tract 2663 contained CW. In his report, the NRCS State Conservationist acknowledged that in 1999 NRCS had erroneously informed FSA and Appellants that there would be no violation if the wetlands on the tract were not cropped. The NRCS Conservationist noted that, as of November 1990, wetland violations were triggered by a producer manipulating wetland to make it farmable and not by the producer actually planting a crop on the wetland. The NRCS Conservationist stated, however, that Appellants would not have been negatively affected by the erroneous information they received from NRCS if, based on that information, they had fulfilled their agreement to cease converting and cropping the wetlands on Tract 2663. (FOF 17; File 2, Tab 15, Pages 20-23; Hearing Testimony, Track 1, 00:33:10-00:34:16.) On March 16, 2007, the COC upheld the wetland determination of NRCS and found Appellants ineligible to receive farm program benefits beginning with PY 1998. In its decision, the COC also found no evidence to grant Appellants relief based upon their good faith effort to comply with the wetland conservation provisions. (File 1, Tab 1; File 2, Tab 15, Pages 3-4.) Thereafter, Appellants appealed to NAD. (File 1, Tab 2; File 2, Tab 15, Pages 1-2.)

James E. Bedeker
Sally Bedeker
Trust #6243
Case No.2007E000453

6

On June 12, 2007, a NAD Hearing Officer conducted a telephonic hearing in which
Appellant-1 and Appellants' attorney participated on behalf of Appellants. Third Party
did not participate in the hearing. (File 1, Tab 7, Page 2.) During the hearing, ES
testified that it was her opinion that the areas NRCS determined to be CW on Tract 2663
may not be wetlands. ES also testified her opinion was documented in two letters sent to
the COC on November 2, 2006. ES further testified that, based on two on-site visits to
Tract 2663, she had determined that the areas designated as CW by NRCS did not contain
hydric soils and that there was no difference in the vegetation of the CW areas and
adjacent fields. ES also noted that no portion of Tract 2663 was avoided because of
wetness but that the entire tract had been cropped. ES stated that the soybean crop
planted on the CW areas was growing, which indicated to her that the areas were not
wetlands. ES disputed the total acreage of CW calculated by NRCS and stated she did
not observe the disturbances listed by NRCS in its wetland determination when she
conducted her on-site visits. ES testified that any conversion by Appellants of wetlands
on Tract 2663 had only a minimal effect because the affected areas still had two of the
three wetland characteristics, hydric soils and wetness, and the only disturbance to the
areas had been tree and stump removal. ES acknowledged that she held no United States
Department of Agriculture (USDA) or NRCS certifications and that she had received no
formal training in the minimal effect evaluation (MEE) process. (FOF 15; File 2, Tab 15,
Pages 28-31; File 2, Tab 16, Appellant Exhibit C and D; Hearing Testimony, Track 1,
1:25:46-1:47:10, 1:49:46-1:54:54, and 2:56:23-2:59:15.) Appellants' attorney argued
that NRCS had not conducted a proper and timely MEE of Appellants' alleged wetland
conversion. (Hearing Testimony, Track 1, 1:47:10-1:48:00 and 1:57:45-1:58:14.)
Appellant-1 admitted that he removed trees and stumps from Tract 2663 in 1998 and that
he continued to remove trees and stumps from the tract after 1998. Appellant-1
acknowledged that soybeans were currently planted on the CW areas of the tract and
stated that he had been instructed not to harvest the soybeans until Appellants' appeal had
concluded. Appellant-1 stated that Appellants had not entered into an agreement with
NRCS to restore the CW areas. (Hearing Testimony, Track 1, 2:53:57-2:54:22, 2:54:28-
2:54:49, and 2:56:06-2:56:21.)

The NRCS representative testified that the first time Appellants requested a MEE was
when they appeared before the COC on November 2, 2006, and that NRCS had
completed an MEE on April 24, 2007. The NRCS representative also testified that
NRCS determines wetland soils based on the conditions that normally existed prior to
any alteration to the land and that if land cannot produce a crop in its normal state but has
been altered to allow it to produce a crop, the land is considered CW. The NRCS further
testified that Appellants had repeatedly certified to FSA that they were not clearing or
cropping wetlands. The NRCS representative acknowledged that NRCS erred in 1999
when it advised FSA and Appellants that not cropping the wetlands on Tract 2663 would
keep Appellants in compliance with wetland conservation provisions. The NRCS
representative stated that the wetland violation in Appellants' case was based on their

James E. Bedeker
Sally Bedeker
Trust #6243
Case No.2007E000453

7

actions taken after they were instructed by NRCS to stop converting and cropping the wetlands on Tract 2663. (FOF 19; File 2, Tab 15, Pages 206-215; Hearing Testimony, Track 1, 1:55:03-1:57:44, 1:58:25-2:19:06, 3:00:26-3:02:00, and 3:06:01-3:07:01.) The NRCS soil specialist testified that the CW areas of Tract 2633 contained hydric soils. The NRCS soil specialist also contested the opinions of ES by pointing out that, contrary to information contained in the opinions, the CW areas not being wet or contiguous to an adjacent sluice (*i.e. waterway*) does not provide a basis for making a wetland determination. The NRCS soil specialist further contested the opinions of ES by stating that adjacent areas to the CW areas were also CW and that wetland vegetation was not dominating the CW areas because Appellants had cropped the areas. The NRCS soil specialist stated that a review of aerial pictures taken of Tract 2663 revealed that the CW areas had been cropped every year since 1998. (Hearing Testimony, Track 1, 2:19:10-2:34:09 and 2:55:06-2:56:05.) The NRCS biologist testified that the MEE showed that all wetland functions or values on the CW areas had been completely lost or reduced and that Appellants had not demonstrated to the satisfaction of NRCS that their actions had only a minimal effect on the wetlands of Tract 2663. (FOF 19; File 2, Tab 15, Pages 206-215; Hearing Testimony, Track 1, 2:34:16-2:39:20.) On July 10, 2007, the Hearing Officer issued a determination in which he upheld the adverse decision of FSA that CW existed on Tract 2663 and that Appellants were ineligible to receive farm program benefits.

## Analysis

On review, Appellants argue the CW areas of Tract 2663 are not wetlands and that the activities of Appellants had only a minimal effect on any wetlands that may be present on the tract. Appellants also argue that that NRCS provided Appellants with inaccurate information in 1999, and that they were denied procedural due process during their NAD hearing.

In its response, NCRS acknowledges that it gave Appellants erroneous information in 1999 by advising them that they did not have to restore the wetlands on Tract 2663 to remain eligible for farm program benefits but only had to stop converting and cropping the wetlands. NRCS argues that Appellants were not affected by the erroneous information because they did not follow it; instead Appellants continued to convert and crop the wetlands. NCRS also argues that it did not receive a timely request for an MEE from Appellants but did perform an MEE that showed Appellants' actions had more than a minimal effect on the wetlands on Tract 2663.

My review of the evidence in the CR shows that Tract 2663 contains wetlands. A wetland has a predominance of hydric soils and supports hydrophytic vegetation under normal circumstances. *See* 7 C.F.R. § 12.2(a) (definition of wetland). During a field investigation, NRCS will identify hydric soils and determine if the land under normal circumstances supports hydrophytic vegetation. *See* 7 C.F.R. § 12.31(a)(1), (b)(1), and

James E. Bedeker
Sally Bedeker
Trust #6243
Case No.2007E000453

(b)(2)(i). If the land has been cleared, NCRS must determine whether hydric soils and hydrophytic vegetation were present prior to clearing by using all possible evidence, including aerial photographs, previous site inspections, and adjacent vegetation. *See* 1987 Manual, Part IV, Section D, Subsection 2, Paragraph 65, Step 2, Page 52; and Section F, Subsection 1, Paragraph 73, Step 3a-h, Pages 74-76. NRCS first identified wetlands on Tract 2633 in 1990. A field investigation conducted by NRCS on April 24, 2006, confirmed that two areas of Tract 2663, totaling 8.5 acres and designated by NRCS as CW-1 (3.5 acres) and CW-2 (5.0 acres), have a predominance of hydric soils. The investigation also confirmed, through the examination of a comparable site, that under normal circumstances CW-1 and CW-2 support hydrophytic vegetation. I am therefore persuaded that in its normal state Tract 2663 contains wetlands.

The record also shows that Appellants converted the wetland areas of Tract 2663 after 1990 for the purposes of producing an agricultural commodity. CW is wetland that has been drain, dredged, filled, leveled, or otherwise manipulated for the production or possible production of an agricultural commodity. *See* 7 C.F.R. § 12.2(a)(definition of converted wetland). A person is ineligible for USDA program benefits if he or she produces an agricultural commodity on highly erodible land or on wetland converted after December 23, 1985, or converts wetland after November 28, 1990 for the purposes of producing an agricultural commodity. *See* 7 C.F.R. § 12.4(a)(1)-(3). A person who mitigates the damage to wetlands by restoring CW to the satisfaction of NRCS shall remain eligible to receive farm program benefits. *See* 7 C.F.R. § 12.5(b)(4)(i). During PY 1998, Appellants were told by NRCS to stop converting (*i.e.* removing trees and stumps) and to stop cropping the wetland areas of Tract 2663. Appellant-1 acknowledged during the hearing that Appellants continued to convert and crop the wetland areas of Tract 2663 during and after PY 1998. Appellants currently grow soybeans on the wetland areas of the tract. Appellants' actions demonstrate that they converted the wetland areas of Tract 2663 after 1990 for the purposes of producing an agricultural commodity. Appellants have made no effort to mitigate the damage to these wetland areas and have not entered into a wetland restoration plan with NRCS. I am therefore persuaded that FSA followed its regulations when it determined that Tract 2663 contained CW and found Appellants ineligible to receive farm program benefits.

Appellants bear the burden of proving by a preponderance of the evidence that the adverse decision of FSA classifying 8.5 acres of Tract 2663 as CW and declaring Appellants ineligible to receive farm program benefits was erroneous. *See* 7 C.F.R. § 11.8(e). In attempting to meet their burden, Appellants argue Tract 2663 does not contain wetlands and argue in the alternative that if Tract 2663 does contain wetlands, Appellants' activities have only a minimal effect on the wetlands. Appellants also argue that they were provided erroneous information by NRCS in 1999, and that their due process rights were denied during their NAD hearing. Appellants' claims that Tract 2663 does not contain wetlands and that Appellants' activities on the tract have only a minimal effect on any wetlands that might be present there are based on the opinions of ES. ES is

James E. Bedeker
Sally Bedeker
Trust #6243
Case No.2007E000453

not certified by USDA or NRCS to conduct wetland certifications and is not trained in the MEE process. During the hearing, the NRCS soil specialist demonstrated that ES developed her opinions using criteria that were not accepted wetland determination criteria under the applicable regulations. The NRCS biologist testified that NRCS conducted an MEE of Tract 2663 after receiving the opinions of ES during Appellants' appeal to the COC. Contrary to the opinions of ES, the MEE indicates that Appellants' activities have more than a minimal effect on the wetland areas of Tract 2663. Appellants therefore have failed to demonstrate to the satisfaction of NRCS that their activities have only a minimal effect on the wetlands. *See* 7 C.F.R. § 12.31(d).

Appellants have also failed to demonstrate that they should be excused from being held ineligible for USDA programs because they relied on the erroneous information they received from NRCS, as they did not follow the advice. Instead, Appellants continued to convert and crop the wetland areas of Tract 2663 after being told by NRCS during PY 1998 to stop engaging in such activities. Moreover, for eight years Appellants certified that they were not disturbing or cropping the wetland even though they were in fact doing so.

With regard to Appellants' assertion that they were denied due process during their NAD hearing, Appellants argue that on more than one occasion their attorney directed questions to a particular NRCS representative that were answered by a different NRCS representative. A review of the hearing testimony reveals that the Hearing Officer conducted the hearing in a manner most likely to obtain the relevant facts by allowing the NRCS representative who possessed the subject matter expertise or had the greater knowledge of materials or events to answer the attorney's questions. A review of the hearing testimony also reveals that Appellants were provided ample opportunity to question all witnesses. *See* 7 C.F.R. § 11.8(c)(5)(ii). I am therefore not persuaded by Appellants' arguments.

### Conclusion

Based on the discussion above, I uphold the Hearing Officer's Determination. I conclude that Appellant did not prove by a preponderance of the evidence that the adverse decision was erroneous.


M. Terry Johnson                    9/26/07
_____            _____
M. TERRY JOHNSON                    DATE
Deputy Director

UNITED STATES DEPARTMENT OF AGRICULTURE
OFFICE OF THE SECRETARY
NATIONAL APPEALS DIVISION

| | | |
|---|---|---|
| In the matter of | ) | |
| | ) | |
| JAMES E. & SALLY BEDEKER | ) | |
| AND TRUST # 6243 | ) | |
| | ) | |
| and | ) | Case No. 2007E000453 |
| | ) | |
| FARM SERVICE AGENCY | ) | |
| | ) | |
| and | ) | |
| | ) | |
| VIKING VENTURES CORP | ) | |
| THIRD PARTY | ) | |
| | ) | |

## APPEAL DETERMINATION

James E. Bedeker & Sally Bedeker and Trust #6243 (Appellants) timely filed an appeal in which they challenge a Farm Service Agency (FSA) decision issued to them on March 16, 2007. FSA affirmed the Natural Resources Conservation Service (NRCS) decision that Appellants converted wetland on Farm Number (FN) 3103, Tract Number (TN) 2663, and FN 149, TN 360.

FSA affirmed a Natural Resources Conservation Service (NRCS) certified wetland determination, and as a result, denied eligibility to participate in United States Department of Agriculture (USDA) programs. NRCS asserted Appellants converted 8.5 acres of wetland on FN 3103, TN 2663, and .4 acres on FN 149, TN 360, by removing trees and stumps. NRCS is the agency within USDA, which in part is responsible for providing technical assistance in matters of natural resources conservation. NRCS contended Appellants converted wetlands because of the hydrology, hydric soils, and hydrophytic vegetation that naturally occur on the property. FSA maintained persons are ineligible to participate in USDA programs if they convert a wetland.

Appellants argued that wetlands do not exist on FN 3103, TN 2663, and FN 149, TN 360. Appellants also argued the following: 1. NRCS gave them inaccurate information in 1999 leading them to believe they were in compliance 2. NRCS did not tell them of the wetland status 3. Their lack of knowledge about a wetland on FN 3103, TN 2663, and FN 149, TN 360 exempts them from the NRCS rules for manipulating a wetland 4. Their actions did not constitute manipulation or had little effect.

James E. & Sally Bedeker
And Trust # 6243
Case No. 2007E000453

I informed and gave Viking Ventures Corp (Third Party and owner of FN 149, TN 360) the opportunity to participate in the appeal proceedings. Third Party did not respond nor take part in the appeal.

I conclude FSA did not err in affirming the NRCS decision that Appellants converted wetland on FN 3103, TN 2663, and FN 149, TN 360. I base my conclusion on the evidence and the arguments presented by Appellants and FSA during a telephone hearing held on June 12, 2007. Additionally, I base my conclusion on the program rules that apply to this case. The rationale for my decision follows.

## STATEMENT OF THE ISSUE

The dispute I had to resolve in this case is whether FSA followed its rules and correctly affirmed Appellants converted wetland on FN 3103, TN 2663, and FN 149, TN 360. To resolve this dispute I had to answer the following questions.

1. Did NRCS correctly determine that FN 3103, TN 2663, and FN 149, TN 360 were wetlands?

2. Did NRCS give Appellants misleading information in 1999 leading them to believe they complied with the conservation compliance provisions of the Food Security Act of 1985?

3. Did NRCS tell Appellants about the wetland status on FN 3103, TN 2663, and FN 149, TN 360?

4. Does Appellants' lack of knowledge about the wetland status on FN 3103, TN 2663, and FN 149, TN 360 exempt them from the NRCS rules for manipulating a wetland?

5. Did NRCS consider minimal effect in this case?

## FINDINGS OF FACT (FOF)

1. On April 25, 1990, NRCS completed a "Highly Erodible Land And Wetland Conservation Determination" on FN 3103, TN 2663 (formerly FN 2398, TN 2663) with the finding of wetlands on the tract. On May 23, 1990, NRCS told the former owner of FN 3103, TN 2663 of the findings by mail. *(Agency record [AR], pages 5, 20, 227)*

2. In 1998, Appellants bought FN 3103, TN 2663. *(AR, page 5)*

2

James E. & Sally Bedeker
And Trust # 6243
Case No. 2007E000453

3. Appellants certified with NRCS on form AD-1026 "Highly Erodible Land Conservation (HELC) and Wetland Conservation (WC) Certification" that they did not conduct nor planned to conduct any farming activities on their wetlands. Appellants certified on July 31, 1998, August 4, 1998, August 3, 1999, June 8, 2000, April 12, 2003, April 24, 2003, September 24, 2003, and July 15, 2005, they did not intend to plant a crop, level, or remove any trees or stumps on FN 3103, TN 2663, and FN 149, TN 360. *(AR, pages 81, 84, 88, 91, 94, 97, 100, 103, 106, 108, 110, 141, 165; Agency Testimony, Hearing Audio Recording [HAR] Track 1, 3:00:46-3:01:31)*

4. On December 21, 1998, NRCS told Appellants that it considered the removal of trees, and wetlands filled with soil, a conversion of wetlands. NRCS also told Appellants their clearing activities would prohibit them from receiving farm benefits. NRCS advised Appellants not to continue with work in the wetland areas until they resolved the issue. *(AR, pages 79, 225)*

5. On August 3, 1999, NRCS told FSA that Appellants had cleared trees on a wetland. NRCS told Appellants their farm program benefits might be in jeopardy. NRCS also told Appellants they were out of compliance because they removed trees. Appellants then agreed to plant permanent grass and NRCS mistakenly told Appellants they would be in compliance for 1999. *(AR, pages 22, 74, 220; Agency Testimony, HAR Track 1, 1:55:00-1:55:20)*

6. On March 21, 2006, NRCS completed a review of crops planted on FN 3103, TN 2663 for years 1980, 1982, 1986, 1991, 1993, 1996, 1997, 1998, 1999, 2000, and 2001. NRCS determined Appellants converted 8.5 acres of wetland. *(AR, pages 166-176; Agency Testimony, HAR Track 1, 00:34:24-00:34:57)*

7. On April 24, 2006, NRCS completed a "Routine Wetland Determination" and found Appellants removed vegetation on FN 3103, TN 2663. NRCS also found wetland indicators were present and the soil was hydric. *(AR, pages 179-205)*

8. On May 5, 2006, NRCS completed a technical review of its wetland determination and affirmed its decision that Appellants converted wetland on FN 3103, TN 2663 (8.5 acres) and on FN 149, TN 360 (.4 acres). *(AR, pages 13-15, 20-23, 116-140, 159-164)*

9. On May 18, 2006, NRCS told Appellants, in its preliminary technical determination, that wetland violations took place on FN 3103, TN 2663, and FN 149, TN 360. *(AR, pages 66-72)*

10. On May 18, 2006, Appellants admitted to NRCS they removed trees and stumps on FN 3103, TN 2663, and FN 149, TN 360. Third Party agreed to restore .4 acres of wetland on FN 149, TN 360. *(AR, pages 13, 21, 217)*

11. On July 7, 2006, and July 13, 2006, FSA told Appellants and Third Party, by letter, that a wetland violation occurred on FN 3103, TN 2663 and FN 149, TN 360. *(AR, pages 13, 57-65)*

12. On August 25, 2006, NRCS determined Third Party acted in "Good Faith." *(AR, pages 14, 142-143)*

James E. & Sally Bedeker
And Trust # 6243
Case No. 2007E000453

13. On October 6, 2006, Third Party signed a wetland restoration plan for FN 149, TN 360. *(AR, pages 14, 144-158B)*

14. On October 23, 2006, Appellants hired an environmental scientist who made an on-site visit to FN 3103, TN 2663. The environmental scientist found soybeans growing successfully on the wetland site. The scientist told FSA the alleged violation site would have a minimal environmental effect on the adjacent wetland complex. The scientist did not inspect FN 149, TN 360. *(AR, pages 28-30, Environmental Scientist Testimony, HAR Track 1, 1:52:40-1:52:43)*

15. Appellants' hired environmental scientist has no USDA certifications and has no NRCS rules training. The environmental scientist has not completed a formal functional assessment. *(Environmental Scientist Testimony, HAR Track 1, 1:49:50-1:52:08; 2:57:58-2:58:05)*

16. On January 17, 2007, NRCS completed a technical review of its wetland determination/delineation on FN 3103, TN 2663 following an April 24, 2006, physical inspection of the farm. NRCS personnel noted wetland hydrology, documented native wetland flora in undisturbed areas within the wetland area, and completed an analysis of hydric soils on the farm. NRCS determined FN, 3103, TN 2663 contained 8.5 acres of converted wetland. NCRS used its rules and "Wetland Mapping Conventions" to assist in its findings. *(AR, pages 20-23; Agency Testimony, HAR Track 1, 00:33:10-00:34:16)*

17. On March 13, 2007, NRCS completed a technical review of its wetland determination/delineation on FN 149, TN 360 following an April 27, 2006, physical inspection of the farm. NRCS personnel observed wetland hydrology, documented native wetland flora in undisturbed areas within the wetland area, and completed an analysis of hydric soils on the farm. NRCS determined FN 149, TN 360 contained .4 acres of converted wetland. NCRS used its rules and "Wetland Mapping Conventions" to assist in its findings. *(AR, pages 12-15; Agency Testimony, HAR Track 1, 00:33:10-00:34:16)*

18. On April 2, 2007, Appellants argued to the National Appeals Division (NAD) that NRCS did not consider minimal effects in its decision. Appellants did not make a formal request for minimal effect after NRCS made its technical determination. *(AR, page 1, Appellants Testimony, HAR Track 1, 2:41:57-2:44:59)*

19. On April 24, 2007, NRCS considered whether Appellants' conversion of 8.5 acres of wetland had a minimal effect and found the change had more than a minimal effect. NRCS determined Appellants were not eligible for a minimal effect exemption. *(AR, pages 206-215)*

## DISCUSSION

The rule found at Part 11 of Title 7 of the Code of Federal Regulations (7 C.F.R.) governs the appeal. The rule found at 7 C.F.R. Part 12 governs the issue on appeal.

4

James E. & Sally Bedeker
And Trust # 6243
Case No. 2007E000453

NRCS correctly determined FN 3103, TN 2663, and FN 149, TN 360 were wetlands. The rules define a wetland as land that has a predominance of hydric soils, is saturated, or inundated by surface or groundwater at a frequency and duration sufficient to support the prevalence of hydrophytic vegetation. Also, under normal circumstances, a wetland does support a prevalence of such vegetation

*[see 7 C.F.R. §12.2]*. A converted wetland is a wetland that was drained, dredged, filled, leveled, or otherwise manipulated (including the removal of woody vegetation) for making agricultural production possible *[see 7 C.F.R. §12.2(3)]*. NRCS will make an on-site visit to determine whether an area meets the wetland criteria if the person affected disagrees with the agency decision *[see 7 C.F.R. §12.6(c)(6)]*. NRCS made a physical inspection of FN 3103, TN 2663, and FN 149, TN 360, analyzed the land in accordance with current rules, and found that hydric soils and hydrophytic vegetation are located or should be located in identified wetland areas *(FOF 7-8, 16-17)*. NRCS observed the wetland areas and determined they contained hydric soils. NRCS reconsidered their wetland delineation following Appellants' request *(FOF 16-17)*. NRCS found the evidence supports a converted wetland determination of 8.5 acres on FN 3103, TN 2663, and .4 acres on FN 149, TN 360. Also supporting the NRCS decision, Appellants' environmental scientist confirmed soybeans were growing successfully in the former wetland area proving the wetlands were indeed converted *(FOF 14)*. Consequently, I have no reason to find NRCS erred in its decision that Appellants converted wetlands on FN 3103, TN 2663, and FN 149, TN 360.

NRCS gave Appellants misleading information in 1999 leading them to believe they complied with the conservation compliance provisions of the Food Security Act of 1985. Appellants agreed in 1999 to stop farming the converted wetland area on FN 3103, TN 2663, and FN 149, TN 360 *(FOF 4-5)*. NCRS warned Appellants not to crop the wetland and Appellants agreed to plant permanent grass. However, Appellants continued to farm the wetland and certified they were not farming to NRCS, which resulted in NRCS deciding that Appellants converted a wetland *(FOF 3-11)*. I understand Appellants' argument that NRCS gave them misleading information. But, I find Appellants had reason to know they were out of compliance because of the certifications they made each year and the agreement they made in 1999 to plant the area to permanent grass *(FOF 3, 5)*.

NRCS told Appellants about the wetland status on FN 3103, TN 2663, and FN 149, TN 360, December 21, 1998, and August 3, 1999. NRCS also told Appellants not to continue work in the wetland area until they could resolve the issue *(FOF 4-5)*. Appellants did not follow-up with the wetland issue and continued to disturb the wetland area resulting in the NRCS decision of wetland conversion *(FOF 6-7, 11, 16-17)*. Therefore, I find Appellants failed to support their argument that NRCS did not tell them about the wetland status.

Appellants' lack of knowledge about the wetland status on FN 3103, TN 2663, and FN 149, TN 360 does not exempt them from the NRCS rules about manipulating a wetland. The rules state anyone wishing to take part in any USDA program is responsible for contacting the correct agency of USDA. They are to contact an agency well before the intended participation date so form AD-1026 "Highly Erodible Land Conservation (HELC) and Wetland Conservation (WC) Certification" can be completed. The AD-1026 will help assure the correct timely determination regarding wetland and conservation plans or scheduling of conservation systems *[see 7 C.F.R. §12.4(h)]*. Appellants signed eight AD 1026s between the years 1998 and 2005. Each of the AD 1026s asked whether Appellants

5

James E. & Sally Bedeker
And Trust # 6243
Case No. 2007E000453

conducted any activities since December 23, 1985, to create new drainage, level land, fill, dredge, land clear, or remove stumps that NRCS did not evaluate. In each AD 1026, Appellants answered no *(FOF 3)*. I find Appellants had reason to know the rules required them to contact NRCS about the removal of trees and stumps on their farm.

NRCS considered minimal effect in this case. The rules require a participant to personally request a hearing not later than thirty days after the date on which the participant first received notice of the adverse decision *[see 7 C.F.R. §11.6(b) and §12.12]*. Appellants did not request a minimal effect decision within thirty days of the May 18, 2006, NRCS preliminary technical determination *(FOF 9)*. Nevertheless, NRCS completed its minimal effects review on April 24, 2007, finding the wetland conversion made by Appellants had a greater than minimal effect on the wetland area *(FOF 18-19)*. Although I understand Appellants' belief their conversion of wetland was not significant, they did not prove they requested a minimal effect decision within thirty days of the preliminary technical determination. More importantly, Appellants did not prove their wetland conversion was in fact minimal.

I considered Appellants' argument that wetland is not located on their farm. Appellants' environmental scientist offered her opinion that a wetland did not exist. However, the environmental scientist could not prove she had the expertise, experience, or training to make a wetland certification *(FOF 14-15)*. Consequently, I find the environmental scientist did not have the credentials necessary to support her assertion that NRCS's decision was erroneous.

I note Appellants continue to argue whether wetland exists on FN 149, TN 360. Third Party did not dispute the NRCS wetland decision and agreed to restore .4 acres of wetland on its farm. NRCS determined Third Party acted in "Good Faith" because it agreed to return .4 acres located in FN 149, TN 360, to a wetland within one year. The rule states that a person the agency determines ineligible for benefits as the result of producing an agricultural commodity in a converted wetland may regain eligibility for benefits if FSA decides the person acted in "Good Faith." The person must agree to implement within one year a mitigation plan *[see 7 C.F.R. §12.5(5)]*. Because NRCS and Third Party signed a wetland restoration plan that brought it back into compliance, Third Party regained its eligibility for benefits *(FOF 10, 12-13)*. Therefore, I find Appellants' argument moot because Third Party has taken action to resolve the wetland issue on FN 149, TN 360.

## DETERMINATION

Seven C.F.R. § 11.8(e) provides that an appellant bears the burden of proving that an agency adverse decision is erroneous. In this case, Appellants have not met that burden. FSA's decision is not erroneous.

James E. & Sally Bedeker
And Trust # 6243
Case No. 2007E000453

This is a final determination of the Department of Agriculture unless a timely review request is filed.

Dated and mailed this 10th day of July 2007.

B. DALE HICKS
Hearing Officer
National Appeals Division

Attachments:
Notice of Right to Request Director Review and/or Copy of Recording(s)
Request for Director Review

7

**FILED**

**MARCH 24, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JAMES E. BEDEKER, SALLY BEDEKER )
and FIRST MIDWEST TRUST COMPANY, )
Trustee Under Trust # 6243 dated )
December 18, 1997, )
                                    )      No.
                  Plaintiffs, )
v. )
                                      )
UNITED STATES OF AMERICA, )
CHARLES F. CONNOR, ACTING SECRETARY )
OF THE UNITED STATES DEPARTMENT OF )
AGRICULTURE, FARM SERVICE AGENCY, )
NATURAL RESOURCES CONSERVATION )
SERVICE, AND THE UNITED STATES )
DEPARTMENT OF AGRICULTURE, )
                                      )
                  Defendant. )

# 08 C 1711

**JUDGE ANDERSEN**
**MAGISTRATE JUDGE NOLAN**

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION AND OTHER RELIEF

Plaintiffs, James E. Bedeker, Sally Bedeker and First Midwest Trust Company, Trustee

Under Trust #6243 dated December 18, 1997, (the "Bedekers") by and through their attorneys,

Schain, Burney, Ross & Citron, Ltd., for their Complaint for Declaratory Judgment, Injunction

and Other Relief against Defendants, United States of America, Charles F. Connor, Acting

Secretary of the United States Department of Agriculture, Farm Service Agency, Natural

Resources Conservation Service, and the United States Department of Agriculture ("Agencies"),

state as follows:

    1.     This is an action seeking judicial review of the final determination of the

National Appeals Division ("NAD") of the United States Department of Agriculture ("USDA")

adverse to the Bedekers denying their request for good faith relief and equitable relief

concerning the Farm Service Agency's ("FSA") previously rendered wetland conversion



EXHIBIT

8.    This Court is a court of competent jurisdiction because the Bedekers reside in the Northern District of Illinois, Eastern Division and the farmland that is the subject of the Director's final determination is similarly located within the Northern District of Illinois, Eastern Division.

### VENUE

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because the Bedekers reside in the Northern District of Illinois, Eastern Division and the Property involved is within the bounds of the Northern District of Illinois, Eastern Division. 28 U.S.C. § 1391(e)(3).

### STATEMENT OF FACTS

10.    In or about 1998 the Bedekers acquired approximately 600 acres of farmland in Grundy County, Illinois. The area at issue in this action is identified by the USDA as Farm Serial Number 3103 ("FSN 3103"), and Tract 2663 ("Tract") and comprises approximately 8.5 acres of the 600 acre farm.

11.    From 1998 to 2006, the Bedekers received farm program benefits from the USDA under various programs, as part of their farm operations.

12.    The USDA has the responsibility for implementing the Food Security Act of 1985, 16 U.S.C. §§3821-23; Pub. L. 99-198, Title XII, 99 Stat. 1504; as amended under the Food, Agriculture, Conservation, and Trade Act of 1990, Pub. L. 101-624; 104 Stat. 3359 (hereinafter the "Act").

13.    Under the Act, persons who violate certain provisions of the Act may become ineligible for government price support payments. 16 U.S.C. §§3801, 3821-24.

14.    The alleged activities in this case relate to an alleged conversion of a wetland on 8.5 acres of land on FN 3103, Tract 2663. These 8.5 acres are part of the Bedekers' farm which in total consists of over 600 acres.

15.    The NRCS alleged a wetland conversion took place in 1998 by the removal of trees and stumps by the Bedekers. On July 17, 2006, the Agency informed the Bedekers that their farm assistance privileges were revoked and that the Bedekers must repay their farm program benefits dating back to 1998 in the total amount of $485,965.44 plus interest and penalties. The FSA upheld this determination by decision dated March 16, 2007.

16.    Thereafter, the Bedekers sought administrative relief on several grounds in order to reverse the NRCS's determination by contesting the area in question is a wetland, by requesting a good faith finding and by requesting equitable relief.

17.    The administrative procedures as to the Bedekers' claim that the area is not a wetland concluded and a final administrative decision was issued on September 26, 2007, when the Deputy Director of the National Appeals Division ("NAD") of the Office of the Secretary of USDA issued its Director Review Determination which upheld the NAD Hearing Officer's July 10, 2007 Appeal Determination which denied the Bedeker's relief.

18.    The Bedekers sought judicial review of the Director Review Determination that the area in question is a wetland by filing an action in the United States District Court for the Northern District of Illinois captioned as, James E. Bedeker, Sally Bedeker and First Midwest Trust Company, Trustee Under Trust #6243 dated December 18, 1997 v. United States of America, Charles F. Connor, Acting Secretary of the United States Department of Agriculture, Farm Service Agency, Natural Resources Conservation Service, and the United States Department of Agriculture, No. 07-CV-6014 ("Bedeker I")

4

19.     Since filing their Complaint in <u>Bedeker I</u>, the administrative procedures on the Bedekers' request for good faith relief and equitable relief concluded and a final administrative decision was issued on February 27, 2008, when the Deputy Director of the National Appeals Division ("NAD") of the Office of the Secretary of USDA issued its Director Review Determination which upheld the NAD Hearing Officer's December 5, 2007 Appeal Determination which denied the Bedeker's request for good faith relief and request for equitable relief. (A true and correct copy of the Deputy Director's Review Determination is attached as Exhibit "A".) (A true and correct copy of the Hearing Officer's Appeal Determination is attached as Exhibit "B".)

20.     The Bedekers claim for good faith relief was based upon 7 C.F.R. §12.5(b)(5)(i) which provides that a party who has lost eligibility for USDA benefits may regain eligibility if the FSA determines that the person acted in good faith and without intent to violate the wetland provisions and if NRCS determines that the person is implementing agreed upon practices in a mitigation plan. To determine whether the party has acted in good faith, the FSA can consider whether, the person should have known that a wetland existed; the NRCS had informed the person about the existence of a wetland; the person has a record of violating wetland provisions; or there is other information that demonstrates that the person has acted with the intent to violate the wetland provisions. 7 C.F.R. § 12.5(b)(5)(ii).

21.     FSA's Highly Erodible Land Conservation and Wetland Conservation Provisions Handbook provides additional factors that FSA can consider to determine if the party acted in good faith. These factors include whether the producer was officially informed of the wetland determination by NRCS and whether there was any face-to-face discussion with the producer about the wetland, prior to the violation. (FSA Handbook 6-CP (Rev.3), *Highly Erodible Land Conservation and Wetland Conservation Provisions,* Paragraph 737 (D), Page 7-96.)

5

22.    The Director of NAD may grant equitable relief in the same manner and to the same extent as FSA under 7 C.F.R. §11.9(e).  Under 7 C.F.R. § 718.303(a), a participant may receive payments if he or she takes action or fails to take action that is detrimental and that is based upon good faith reliance on the action or advice of an authorized representative of a county or state FSA committee.

23.    The record below amply demonstrates good faith relief and/or equitable relief are appropriate and should have been granted.

24.     It is undisputed that the Bedekers were given inaccurate information in 1998 by the Agency with regard to the Tract and it was not until 2006 that the Agency changed its view on the Tract and sought to recover payments dating back to 1998.  The Bedekers relied on this inaccurate information to their detriment.

25.    Moreover, the Agency did not have any further contact with the Bedekers until after 1998 and did not make a formal wetland determination until 2006.  There was never a mitigation plan entered into between the Agency and the Bedekers.

26.    This Court's review of an agency action is governed by the Administrative Procedures Act, 5 U.S.C. §§ 702-706. (the "APA").

## COUNT I – ADMINISTRATIVE PROCEDURES ACT

27.    The Bedekers repeat and reallege paragraphs 1 through 26 as though fully set forth herein.

28.    For the reasons set forth in the record, including but not limited to the following, the February 27, 2008 determination of the Director of the NAD is arbitrary and capricious because (a) the Tract is not a wetland; (b) the underlying decisions ignored and wrongfully interpreted the elements for a finding of good faith and equitable relief and wrongly failed to grant good faith relief and/or equitable relief; (c) the underlying decisions are based on

6

admittedly wrong information provided by the Agency to the Bedekers; and (d) there was no formal wetland determination until 2006 (e) there was no mitigation plan agreed to between the Agency and the Bedekers.

WHEREFORE, Plaintiffs, James E. Bedeker, Sally Bedeker and First Midwest Trust Company, Trustee Under Trust #6243 dated December 18, 1997, respectfully request this Honorable Court to reverse the determination of the Director of the NAD, grant their request for good faith relief and/or equitable relief, issue a finding that the Agency is not entitled to any refund of any farm program benefits; and order the reinstatement of the Bedekers' eligibility for farm program benefits and grant such further and other relief as is just and proper.

## COUNT II – PRELIMINARY INJUNCTION

29.     The Bedekers repeat and reallege paragraphs 1 through 28 as though fully set forth herein.

30.     The February 27, 2008 determination of the Director of the NAD is the final order of the USDA and concludes all administrative proceedings available to the Bedekers.

31.     7 U.S.C. § 7000 provides for implementation of any final determination of the NAD no later than thirty (30) days after the effective date of the notice of the final determination.

32.     On the return of a case to an agency pursuant to the final determination of the NAD, the head of the agency is empowered to implement the final determination not later than the 30-day period.

33.     By timely filing the instant action for judicial review prior to expiration of the 30-day period, the Bedekers seek reversal or remand of that determination and a stay of any enforcement proceedings pending the outcome before this Court.

34.     The Bedekers can demonstrate the probability of success on the merits of their claims entitling them to a preliminary injunction preventing the Secretary of Agriculture or any other USDA personnel from implementing the determination.

35.     The Bedekers can demonstrate a sufficient threat of irreparable harm.  The USDA's demand for repayment of past farm program benefits and decertification of eligibility for future benefits is unreasonable and would cause an extreme level of harm if inflicted on the Bedekers.

36.     The Bedekers cannot be fully compensated by damages for the loss of the intangible value of their farming operation as a result of such disgorgement of past benefits or loss of future benefits.

37.     In balancing the harms, this Court must consider the balance between the harm to the Bedekers and the injury that the injunction's issuance would inflict on other interested parties and the public interest.

38.     The Bedekers alleged conversion of 8.5 acres of purported wetlands in a farming operation encompassing 600 acres is small, would have a minimal effect and may be subject to restoration.

39.     The public interest supports the issuance of an injunction in favor of the Bedekers.  The purposes and interests of the underlying legislation were intended to serve a preference for enjoining inequitable conduct and the public's interest in minimizing unnecessary costs to be met from public coffers.

40.     Even given the importance of preventing wetlands conversion, the issuance of a preliminary injunction would do nothing more than maintain the status quo, and thus would be appropriate and in line with public interest considerations.

8

WHEREFORE, Plaintiffs, James E. Bedeker, Sally Bedeker and First Midwest Trust Company, Trustee Under Trust # 6243 dated December 18, 1997 respectfully request this Honorable Court to issue a preliminary and eventual permanent injunction prohibiting the USDA, the Secretary and any personnel acting in his place or stead, from any implementation of the determination pending the ruling of this Court on the merits of Bedekers' Complaint and grant such further and other relief as is just and proper.

## COUNT III – DECLARATORY JUDGMENT

41.    Plaintiffs repeat and reallege paragraphs 1 through 40 as though fully set forth herein.

42.    The February 27, 2008 determination of the Director of the NAD was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; was in excess of his statutory jurisdiction, authority or limitations or short of statutory rights; was without observance of procedures required by law, and was unsupported by substantial evidence.

43.    For the reasons set forth in the record, including but not limited to the following, the February 27, 2008 determination of the Director of the NAD is arbitrary and capricious because (a) the area in question is not a wetland;  (b) the underlying decisions ignored and wrongfully interpreted elements for a finding of good faith and equitable relief and wrongly failed to grant good faith relief and/or equitable relief; (c) the underlying decisions are based on admittedly wrong information provided by the Agency to the Bedekers; and (d) there was no formal wetland determination until 2006 (e) there was no mitigation plan agreed to between the Agency and the Bedekers.

WHEREFORE, Plaintiffs, James E. Bedeker, Sally Bedeker and First Midwest Trust Company, Trustee Under Trust #6243 dated December 18, 1997, respectfully request this Honorable Court to reverse the determination of the Director of the NAD, issue a finding that

the Agency is not entitled to any refund of any farm program benefits; and order the reinstatement of the Bedeker's eligibility for farm program benefits and grant such further and other relief as is just and proper.

Respectfully submitted,

JAMES AND SALLY BEDEKER, AND
FIRST MIDWEST TRUST COMPANY
TRUST #6243 dated December 18, 1997

By: _____

One of Their Attorneys

Timothy J. McGonegle
Patrick T. Brankin
SCHAIN, BURNEY, ROSS & CITRON, LTD.
222 North LaSalle Street
Suite 1910
Chicago, IL 60601
(312) 332-0200 (phone)
(312) 332-4514 (fax)

F:\PTB\Bedeker\Complaint for Declaratory-3-11-08.doc



**USDA**

*UNITED STATES DEPARTMENT OF AGRICULTURE*
*OFFICE OF THE SECRETARY*
*NATIONAL APPEALS DIVISION*

## DIRECTOR REVIEW DETERMINATION

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| JAMES E. BEDEKER ) | **08 C 1711** |
| ) | |
| and ) | |
| ) | Case No. 2007E000867 |
| FARM SERVICE AGENCY ) | **JUDGE ANDERSEN** |
| ) | **MAGISTRATE JUDGE NOLAN** |
| and ) | |
| ) | |
| SALLY BEDEKER and TRUST 6235 ) | |
| THIRD PARTIES ) | |

On January 3, 2008, James E. Bedeker (Appellant) and Third Parties Sally Bedeker and Trust 6235 (collectively, Appellant) filed a request for a Director review of a National Appeals Division (NAD) Hearing Officer Determination issued on December 5, 2007. The Hearing Officer upheld the Farm Service Agency's (FSA) adverse determination, dated August 24, 2007, which denied Appellant's request for good faith relief concerning FSA's previously rendered wetland conversion determination. Appellant also requested equitable relief.

I uphold the Hearing Officer's determination as I have concluded upon review that it is supported by substantial evidence. I also deny equitable relief. In arriving at this decision, I have reviewed the applicable laws and regulations; the case record, including the hearing recording and the Hearing Officer's determination; Appellant's request for review; and FSA's response thereto.

### Issue in This Case

The issue I must address in this case is whether FSA appropriately denied Appellant's request for good faith relief. Specifically, I must determine if Appellant acted in good faith and did not intentionally violate the United States Department of Agriculture's (USDA) wetlands regulations. I must also determine if equitable relief may be appropriate because Appellant has shown he relied on erroneous information FSA provided him.

*3101 Park Center Drive, Suite 1100*
*Alexandria, Virginia 22302*
*www.nad.usda.gov*

An Equal Opportunity Employer

James E. Bedeker                                                                                  2
Case No. 2007E000867

## <u>Legal Standards</u>

The controlling regulations are published at Parts 11, 12 and 718 of Title 7 of the Code of
Federal Regulations (C.F.R.).  A person is ineligible for all or a portion of USDA program
benefits if he converts a wetland by draining, dredging, filling, leveling, removing woody
vegetation or using other means in order to make the production of agricultural commodities
possible.  7 C.F.R. § 12.4(a)(3).  A person determined to be ineligible cannot obtain most
program benefits offered by USDA, including marketing assistance loans, price support, or
payment benefits, among other benefits.  7 C.F.R. § 12.4(c)–(d).

A party who has lost eligibility for USDA benefits (as described above) may regain eligibility if
FSA determines that the person acted in good faith and without the intent to violate the wetland
provisions and if NRCS determines that the person is implementing all practices in a mitigation
plan.  7 C.F.R. § 12.5(b)(5)(i).  To determine whether the party has acted in good faith, FSA can
consider whether:  the person should have known that a wetland existed; NRCS had informed the
person about the existence of a wetland; the person has a record of violating wetland provisions;
or there is other information that demonstrates that the person has acted with the intent to violate
the wetland provisions.  7 C.F.R. § 12.5(b)(5)(ii).  FSA's Highly Erodible Land Conservation
and Wetland Conservation Provisions Handbook provides additional factors that FSA can
consider to determine if the party acted in good faith.  These factors include whether the
producer was officially informed of the wetland determination by NRCS and whether there was
any face-to-face discussion with the producer about the wetland, prior to the violation.  FSA
Handbook 6-CP (Rev. 3), *Highly Erodible Land Conservation and Wetland Conservation
Provisions*, Paragraph 737(D), Page 7-96.  Further, in cases where a party seeks to obtain an
exemption based on good faith, it is that person's responsibility to provide evidence, such as
receipts, crop-history data, drawings, plans or similar information for purposes of determining
whether the conversion or other action is exempt.  7 C.F.R. § 12.5(b)(7).

The Director of NAD may grant equitable relief in the same manner and to the same extent as
FSA under applicable laws and regulations.  7 C.F.R. § 11.9(e).  Under 7 C.F.R. § 718.303(a), a
participant may receive payments if he or she takes action or fails to take action that is
detrimental and that is based upon good faith reliance on the action or advice of an authorized
representative of a county or state FSA committee.

On an appeal to the National Appeals Division, Appellant bears the burden of proving by a
preponderance of the evidence that the adverse FSA decision is erroneous.  *See* 7 C.F.R.
§ 11.8(e).

James E. Bedeker                                                                    3
Case No. 2007E000867

## **Background**

On December 21, 1998, NRCS contacted Appellant and warned him that he may be violating USDA's wetland regulations. File 2, Tab 15, Pages 3, 27, 40–41, and 93–94. On August 3, 1999, NRCS notified FSA, using Form FSA-569, that Appellant had cleared trees on a wetland in 1998 and that his property was indentified as now having converted wetland. File 2, Tab 15, Page 91. File 2, Tab 15, Page 90–91. NRCS noted in a cover letter to the Form FSA-569 that Appellant had "agreed to not farm the new[ly converted] acreage . . . [and that he planned] to seed it to some permanent grass and keep it out of production." File 2, Tab 15, Page 90. Appellant never reseeded the land converted in 1998 to a permanent cover. Appellant also continued to plant crops on the converted area and on other land he later converted from wetlands. File 2, Tab 15, Pages 8, 43, 75–81, and 95.

On July 13, 2006, FSA notified Appellant that he was ineligible for USDA programs beginning with the 1998 crop year. File 2, Tab 15, Pages 69–70. FSA also gave Appellant the opportunity to request a good faith determination. File 2, Tab 15, Pages 69–70 and 96. On July 17, 2006, FSA provided Appellant with an itemized listing of specific program payments, along with the interest and penalties due to FSA through August 10, 2006. File 2, Tab 15, Pages 63–68. As of July 17, 2006, Appellant owed FSA $485,965.44. File 2, Tab 15, Pages 63–68. On August 11, 2006, Appellant requested an FSA appeal of the wetland violation. File 2, Tab 15, Pages 40–41 and 61–62.

On November 2, 2006, the County Committee (COC) in Appellant's county heard Appellant's request for good faith relief. File 2, Tab 15, Pages 46–47. On November 15, 2006, the COC denied Appellant's request for good faith relief. The COC determined that NRCS had informed Appellant of the wetland provisions in 1998, and that Appellant had incorrectly certified that he was compliant with wetland regulations on his 1998, 2000, 2003, and 2005 Forms AD-1026 (Highly Erodible Land Conservation (HELC) and Wetland Conservation (WC) Certification). File 2, Tab 15, Pages 42–47 and 85–89.

Because of this outcome, Appellant requested mediation on November 30, 2006, but FSA and Appellant failed to resolve their differences at this meeting. File 2, Tab 15, Page 35. The COC formally denied Appellant's request for a good faith determination at its December 8, 2006 meeting. File 2, Tab 15, Page 52. On April 30, 2007, Appellant appealed the COC determination to deny Appellant's request for good faith relief to the FSA State Committee. File 2, Tab 15, Pages 37–39.

On May 9, 2007, NRCS confirmed the wetland violation. File 2, Tab 15, Pages 40–45 and 101–02. FSA noted that it informed Appellant of the COC's denial of his request for good faith relief on November 15, 2006. File 2, Tab 15, Pages 101–02. On August 24, 2007, the State Committee informed Appellant that good faith relief was denied. File 2, Tab 15, Page 2–6.

James E. Bedeker                                                                                    4
Case No. 2007E000867

Appellant appealed FSA's decision to NAD. File 1, Tab 2. A NAD Hearing Officer held a
hearing and concluded that FSA had acted consistently with its regulations. File 1, Tab 7.
Appellant subsequently filed this request for Director review. File 1, Tab 8.

## Analysis

I find that FSA did not err in determining that Appellant was ineligible for a good faith
exemption under the wetlands regulations. A party who has lost eligibility for USDA benefits
may regain eligibility if FSA determines that the person acted in good faith and without the
intent to violate the wetland provisions. 7 C.F.R. § 12.5(b)(5)(i). FSA Handbooks provide a
broad range of factors that FSA can examine to determine if a party has acted in good faith.
These factors include, but are not limited to, whether NRCS informed the person about the
existence of a wetland, whether the person has a record of violating the wetland provisions,
whether there is information that indicates an intent to violate the provisions, whether NRCS
officially informed the person of a wetland determination, and whether NRCS informed the
person face-to-face about a wetland prior to the violation. The burden is on Appellant to show
that FSA exceeded its authority when it determined Appellant failed to act in good faith.

FSA correctly cited several factors that indicated why Appellant was not eligible for a good faith
determination. For example, the FSA State Committee determined that Appellant was aware that
the wetlands regulations existed in 1998 because he filed a Form AD-1026 (Highly Erodible
Conservation (HELC) and Wetland Conservation (WC) Certification). It further noted that
Appellant was informed on December 21, 1998 and August 3, 1999 that he was or was about to
be out of compliance with the wetlands regulations and that a penalty may be levied. The second
of these letters was specific enough to put Appellant on notice that he had to reseed the area and
not plant crops in the area again. Despite this information, FSA presented valid evidence that
Appellant had (1) failed to reseed the area as discussed in the August 3, 1999 letter, (2)
continued to grow crops on the converted wetland, and (3) converted additional wetlands on the
same farm and another farm in violation of the wetland regulations. Such activity is sufficient to
show intent to violate wetlands regulations or a lack of good faith in following such regulations.

Appellant also misinformed FSA for years when filing his Forms AD-1026 (Highly Erodible
Conservation (HELC) and Wetland Conservation (WC) Certifications). Despite his knowledge
of conversion of several acres of wetland property, in 1998, 2000, 2003, and 2005 Appellant
certified to FSA that he had not converted any of his wetlands for cropland.

Appellant raises one major argument. He claims that the violations are not his fault because
NRCS incorrectly informed him that his activities were not considered a conversion of wetlands.
This argument is of limited persuasive value when viewed in the context of Appellant's actions.
The August 3, 1999 letter from NRCS to FSA that describes NRCS's interaction with Appellant
makes it clear that Appellant was aware that what he had done was out of compliance. The letter
states that "When [NRCS] met with [Appellant], he told us about the work that had been done
earlier, and we informed him that *he was out of compliance since he had cleared trees in a
wetland and planted a crop*." File 2, Tab 15, Page 90 (emphasis added). The letter

James E. Bedeker                                                                      5
Case No. 2007E000867

unequivocally states that Appellant would reseed the acreage and not plant crops on it.
Appellant's complaint that he received no further direction is irrelevant, given the fact that
NRCS believed Appellant would do what he said he would. Instead, and as the record makes
clear, Appellant never bothered to reseed and in fact increased production by clearing adjacent
areas and putting it into production. Such activity does not show that Appellant was innocently
misinformed, but rather shows that he intentionally violated the wetlands regulations.

Appellant also requests equitable relief, which I deny. A party may receive equitable relief if he
or she takes action or fails to take action that is detrimental and that is based upon good faith
reliance on the action or advice of an authorized representative of a county or state FSA
committee. For the same reasons described above, I am not inclined to grant equitable relief to
Appellant. Appellant knowingly farmed wetlands, failed to follow NRCS's directive of
August 3, 1999, and repeatedly filed certifications that were untrue for several years. The funds
sought by FSA are not a penalty that is being imposed but instead represent a refund of payments
for which Appellant was never eligible due to his farming these wetlands. Under the
circumstances, I find no basis to grant equitable relief in his case.

### Conclusion

Based on the discussion above, I uphold the Hearing Officer's determination. I also find that
equitable relief is unwarranted.


M. TERRY JOHNSON                                    2/27/08
Deputy Director                                        DATE

UNITED STATE DEPARTMENT OF AGRICULTURE
OFFICE OF THE SECRETARY
NATIONAL APPEALS DIVISION

| | |
|---|---|
| In the matter of | ) |
| | ) |
| JAMES E. BEDEKER | ) |
| | ) |
| and | ) |
| | ) |
| FARM SERVICE AGENCY | ) |
| | ) |
| and | ) |
| | ) |
| THIRD PARTIES | ) |
| SALLY BEDEKER | ) |
| TRUST 6235 | ) |

Case No. 2007E000867

# 08 C 1711

**JUDGE ANDERSEN**
**MAGISTRATE JUDGE NOLAN**

## APPEAL DETERMINATION

James E. Bedeker (Appellant) filed an appeal challenging a Farm Service Agency (FSA) adverse decision dated August 24, 2007. FSA denied Appellant's request for good faith relief. FSA decided Appellant did not act in good faith when he converted wetlands on Farm Number (FN) 149, Tract (T) 360 and FN 3103, T 2663. FSA based its decision on a Natural Resources Conservation Service (NRCS) final technical determination. NRCS is the agency within USDA, which in part is responsible for providing technical assistance to FSA in matters of wetland conversion.

Appellant contests the FSA good faith determination and requests relief regarding his ineligibility to receive USDA program benefits since 1998. Appellant contends the wetland violation occurred because of miscommunication and it was not an intentional violation. Appellant continues to dispute the wetland violation, however, the National Appeals Division (NAD) Director reviewed the issue in NAD Case No. 2007E000453, upheld the FSA wetland violation decision, and administratively finalized the case on September 26, 2007.

At Appellant's request, I held a telephone hearing on October 30, 2007, and closed the record on November 5, 2007. Based on the evidence and the arguments submitted by the parties, and the program regulations that apply to this situation, I conclude the FSA decision was not in error. The rationale for my decision follows.

I notified Third Parties of the appeal proceedings and the opportunity to participate, however neither responded to the notices nor participated in the proceedings.

James E. Bedeker
Case No. 2007E000867

3. Appellant did not reseed the 1998 converted wetland area to a permanent cover. Appellant continued cropping activity on the converted area and converted other wetlands. [*Agency Record, Pages 3, 8, 26, 43, 4, 75-81, and 95*]

4. On July 13, 2006, FSA notified Appellant he was ineligible for USDA programs beginning with 1998, and gave him the opportunity to request a good faith determination. [*Agency Record, Pages 27, 69-70, and 96*]

5. On July 17, 2006, FSA provided Appellant with an itemed listing of specific program payments, interest and penalties due through August 10, 2006, for a grand total of $485,965.44. [Agency *Record, Pages 63-68*]

6. On August 11, 2006, Appellant requested an FSA appeal of the wetland violation and executed "Good Faith Determination – Wetland Activity" (Form AD-1069) requesting a good faith determination. [*Agency Record, Pages 40-41, 61-62, and 96*]

7. On November 2, 2006, FSA's County Committee (COC) heard Appellant's request for good faith relief. [*Agency Record, Pages 27, 40-41, 46-48, and 96*]

8. On November 15, 2006, the COC denied Appellant's request for good faith relief. The COC decided NRCS informed Appellant of the wetland provisions in 1998. The COC noted Appellant's incorrect certifications of wetland compliance on "Highly Erodible Land Conservation (HELC) and Wetland Conservation (WC) Certification "(Form AD-1026) in 1998, 1999, 2000, 2003 and 2004. [*Agency Record, Pages 27, 42-47, and 96*]

9. On November 30, 2006, Appellant requested mediation of the wetland issues. [*Agency Record, Pages 27, 35, and 96*]

10. The COC denied Appellant's request for a good faith determination during its December 8, 2006, meeting. [*Agency Record, Page 52*]

11. Mediation closed on April 30, 2007, without the parties reaching any agreement or resolution. [*Agency Record, Pages 27, 35, 38, and 96*]

12. On April 30, 2007, Appellant and Third Parties appealed the COC determination to deny Appellant's request for good faith relief to the FSA State Committee (STC). [*Agency Record, Pages 27, 38-39, and 96*]

13. On May 9, 2007, NRCS signed Form AD-1069, confirming the wetland violation. FSA signed the form and noted that it informed Appellant of the COC's denial of his request for good faith relief on November 15, 2006. [*Agency Record, Pages 40-45, and 101-102*]

14. On August 15, 2007, the STC heard the appeal for Appellant and Third Parties. The STC determined Appellant and Third Parties did not act in good faith and denied relief. [*Agency Record, Pages 7-9, and 26-28*]

3

James E. Bedeker
Case No. 2007E000867

15. On August 24, 2007, FSA notified Appellant it denied good faith relief because of the
converted wetlands. [*Agency Record, Pages 2-6*]

## DISCUSSION

Part 11 of Title 7 of the Code of Federal Regulations (7 C.F.R.) governs the appeal. Seven
C.F.R. Parts 12 and 718 (2006) governs the issues on appeal.

Appellant failed to act in good faith. Seven C.F.R. and FSA handbooks are silent regarding a
definition for use in determining good faith. Seven C.F.R. § 12.5(b)(5)(ii) sets forth that FSA
shall consider such factors as whether the person was aware of the wetland; if NRCS had
informed the person about the wetland; if the person converted the wetland; if the person has a
record of violating wetland provisions; or if there exists other information that demonstrates the
person acted with the intent to violate the wetland provisions. FSA based the Appellant's lack of
good faith on Appellant's awareness of the wetland provisions and the incorrect certifications of
wetland compliance on Form AD-1026 in 1998, 1999, 2000, 2003 and 2004 [*FOF 1-2 and 8*].
Appellant did not disprove the FSA position that he was aware of wetland provisions or that he
incorrectly completed Form AD-1026's [*FOF 1-3, 6, and 8*]. I find FSA has the discretionary
authority to determine good faith issues. In this case, Appellant did not prove FSA exceeded its
authority when it determined he failed to act in good faith.

I considered Appellant's arguments and found them unpersuasive. Seven C.F.R. § 12.5(b)(5)
directs FSA to consider all information surrounding the wetland violation to determine good
faith. I understand Appellant's belief the wetland violation occurred because of
miscommunication and it was not an intentional violation. I also understand the monetary
hardship the denial of good faith relief causes Appellant [*FOF 5*]. However, NRCS notified
Appellant about USDA wetland provisions and violation consequences [*FOF 1-2*]. After NRCS
notices, Appellant continued to violate the wetland provisions and incorrectly completed five
certifications of wetland compliance [*FOF 1-3 and 8*]. I will not address the NRCS final
technical determination on converted wetland or Appellant's resultant ineligibility for USDA
programs, as the NAD Director issued an administratively final determination on these issues
[*See Background*]. Appellant's arguments do not show FSA erred.

I considered Appellant's arguments for relief. However, as a Hearing Officer, I have no
authority to grant or deny equitable relief. In accordance with 7 C.F.R. § 11.9(e), the Director
has the authority to grant equitable relief to the same extent such authority is provided an agency.
I will not determine the matter, but am responsible for developing a record to enable the Director
to make a determination as to whether equitable relief should be granted. If the Appellant wishes
to request equitable relief, the request should be made in the request for Director review.

James E. Bedeker
Case No. 2007E000867

**DETERMINATION**

Seven C.F.R. § 11.8(e) provides that an appellant bears the burden of proving that an agency's adverse decision is erroneous by a preponderance of the evidence. In this case, Appellant did not meet this burden. The Agency decision is not erroneous.

This is a final determination of the Department of Agriculture unless a timely request for review is filed.

Dated and mailed this 5th day of December 2007.

*Jorga J. Altman*

JORGA W. ALTMAN
Hearing Officer
National Appeals Division

Attachments:
Notice of Right to Request Director Review and/or Copy of Audio Record
Request for Director Review

5

James E. Bedeker
Case No. 2007E000867

Distribution of copies:

Appellant
James E. Bedeker
Post Office Box 570
Morris, Illinois 60450

Appellant's Representative
Patrick T. Brankin, Attorney at Law
Schain, Burney, Ross, and Citron, LTD
222 North LaSalle Street
Chicago, Illinois 60601-1102

Third Parties
Sally Bedeker
Post Office Box 570
Morris, Illinois 60450

Trust 6235
c/o James E. Bedeker
Post Office Box 570
Morris, Illinois 60450

Copy of this Appeal Determination sent from the National Appeals Division Eastern Regional
Office via Federal Express to:

FSA Administrator
c/o Appeals & Litigation Group
Farm Service Agency
1400 Independence Avenue, SW
Room 6722-S
Washington, DC 20250-0570

6