UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES E. BEDEKER, SALLY BEDEKER and FIRST MIDWEST TRUST COMPANY, TRUSTEE UNDER TRUST #6243 dated December 18, 1997,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*<br><br>Defendants. | Nos. 07 C 6014, 08 C 1711<br><br>Judge Pallmeyer |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
DEPARTMENT OF AGRICULTURE'S ADMINISTRATIVE DECISION**

**Introduction**

This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, *et seq.*, in which plaintiffs, James and Sally Bedeker ("Bedekers"), seek judicial review of decisions of the United States Department of Agriculture ("USDA") that the Bedekers converted wetlands on their farms, rendering them ineligible for farm benefits. The Bedekers misapprehend the standard of review, and this court should affirm the USDA's administrative decisions.

In 1985, Congress enacted the conservation title of the Food Security Act, 16 U.S.C. §§ 3801 *et seq.*, including wetland conservation provisions, known as "swampbuster," restricting participation in federal farm programs by farmers who convert wetlands into farmlands or who farm converted wetlands. Section 3821(a) makes ineligible for farm benefits any farmer who produces a crop on land determined by the USDA to be a converted wetland. Section 3821(c), as amended in 1990, makes ineligible any farmer who converts wetlands for the purpose, or to have the effect, of making the production of an agricultural commodity possible on such converted wetland.

Section 3822 lists several exceptions to the ineligibility rules, two of which the Bedekers invoked in the administrative process. First, an exception is made for *de minimus* actions which "individually and in connection with all other similar actions authorized by the Secretary in the area, will have a minimal effect on the functional hydrological and biological value of the wetlands in the area, including the value to waterfowl and wildlife." 16 U.S.C. § 3822(f)(1). *See also*, 7 C.F.R. § 12.5(b)(1)(v). Second, the statute contains a good faith exception which permits the USDA Secretary, in the exercise of its discretion, to waive a person's ineligibility "if the Secretary determines that the person has acted in good faith and without intent to violate" the wetland conservation rules. 16 U.S.C. § 3822(h)(1).

**Facts**

The Bedekers acquired Farm 3103 in Grundy County, Illinois in 1998. A-105.[1] That year, they filled some wetlands and cleared trees and stumps from additional wetlands on the site. A-252. Years earlier, in 1990, the National Resources Conservation Service (NRCS) had determined that the farm contained fourteen acres of wetlands, and so advised the previous owner. A-155, 193. In November 1998, an NRCS conservationist met with the Bedekers on their farm, observed the work they had done, and determined that the Bedekers had converted 5.3 acres of wetlands. A-252, 253. The conservationist wrote a letter to the Bedekers, documenting the meeting, and advising them that their activities in the site wetlands jeopardized the Bedekers' entitlement to farm program benefits:

> From my observations, a number of trees are being cleared, stumps removed, and then burned. In reviewing USDA's wetland inventory maps, these areas are shown to be wetlands. Some of this work is being done to maintain some existing drainageways. However, some

---

[1] Following the convention adopted in plaintiffs' memorandum, "A" refers to the record for NAD Case No. 2007E000453; "B" to the record for NAD Case No. 2007E000867.

> of this work also appears to be clearing of wetlands to improve drainage and possibly allow more land to be cropped. If this is actually the case, USDA views this activity as the conversion of wetlands.
>
> The Farm Bill of 1996 prohibits anyone converting wetlands to be eligible for any farm program payments, loans, insurance, or cost-share payments.

*Id.* The NRCS enclosed with the letter copies of the wetland inventory maps and soil survey maps for the farm, admonished the Bedekers that their farm benefits could be in jeopardy, and advised them not to do any more work in the site wetlands until the situation could be resolved. *Id.* Shortly thereafter, the NRCS advised the Bedekers they could maintain eligibility for benefits by planting the wetland area in permanent grasses and not farming it, and the Bedekers agreed to these conditions. A-106, 247-248. The Bedekers, however, did not abide by this agreement. Instead, they planted crops on the cleared wetlands, and over the next two years, cleared and converted more than three additional acres of wetland on Farm 3103. A-156, 337-338, 341. They also converted .4 acres of wetlands on a different farm (Farm Number 149). A-156, 289-290.

In 2006, during the transfer of map information to new digital imagery, the Grundy County FSA and NRCS offices noticed apparent wetland conversion activity on the Bedekers' farm. B-127. On May 5, 2006, NRCS made a preliminary wetland determination for Tract 2663 on Farm 3103, and concluded that the Bedekers had converted a total of 8.5 acres of wetland (5.3 acres in 1998 and an additional 3.2 acres between 1998 and 2001), and had planted crops on the converted areas. A-156, 337-338, 341. The NRCS also determined that an additional .4 acres of wetlands had been converted on Farm 149, a separate farm which the Bedekers leased from a third party. A-156, 289-290. The FSA Grundy County Office Committee (COC) found that the Bedekers were responsible

3

for this separate violation, having removed trees and stumps without the owner's knowledge or consent. A-156-157. The NRCS provided its wetland determination to the Bedekers on May 18, 2006, and notified them the determination would become final on June 6, 2006, unless the Bedekers requested mediation or a field visit. A-239-242.

After the NRCS determination became final, the FSA notified the Bedekers on July 13, 2006, that they were ineligible to receive farm benefits beginning in crop year 1998. A-156, 230-245. On August 11, 2006, the Bedekers (1) appealed the July 13, 2006 eligibility decision to the COC, and also (2) requested alternatively a finding that they acted in good faith. A-156, 221-223. Two extensive administrative review processes ensued along these two tracks.

**Appeal of the July 13, 2006, Eligibility Decision**

The Bedekers admitted that they had removed the trees and stumps for the purpose of farming the land (A-156, 154), but they questioned the NRCS's determination that there were wetlands on Farm 3103. On November 2, 2006, the Bedekers submitted two letters from an environmental scientist, who opined that the cited area on Farm 3103 "may not have been a wetland" and that any violation had minimal effects. A-157, 201-203. The COC considered the Bedekers' evidence and on March 16, 2007, after consulting with the NRCS State Conservationist, upheld the NRCS wetland determination. A-157, 176-177.

On April 2, 2007, the Bedekers appealed the COC's determination to the National Appeals Division (NAD) of the USDA, arguing that the area in question on Farm 3103 was not wetland; that they did not know the areas were wetlands; that they had been given inaccurate information in 1999, leading them to believe that they were in compliance; and that the NRCS determination did not take into account the minimal effects defense. A-27, 104. A NAD hearing officer held an evidentiary

4

hearing on the appeal on June 12, 2007 (A-628), and on July 10, 2007, issued a written decision finding that the Bedekers had failed to meet their burden of proving that the FSA's decision was erroneous. A-104-109. The hearing officer credited the NRCS wetland determination, noting that the NRCS had conducted a physical inspection of the farm and documented wetland hydrology, wetland flora and hydric soils in accordance with established NRCS procedure. A-107 (FOF 17). The hearing officer declined to rely on the testimony of the Bedekers' environmental scientist, noting that she lacked any USDA certifications or training in NRCS procedure and had not completed a formal functional assessment of the site. A-107 (FOF 15), 109.

      The hearing officer noted that lack of knowledge about wetland status does not exempt a farmer from the conservation rules which condition eligibility for farm benefits, but that the issue was not presented here, because NRCS specifically told the Bedekers about the site wetlands. A-108. The hearing officer also rejected the Bedekers' argument that they had relied on inaccurate information from the NRCS conservationist in 1998. *Id.* The information from the NRCS was that the Bedekers could be in compliance by (1) keeping the wetland out of production; (2) seeding the wetland in permanent cover; and of course (3) not converting any more wetlands. A-108-109, 252. The hearing officer noted that under the applicable statutes and regulations, keeping the already-converted wetland out of production was not enough to resolve the 1998 violation, but rejected the Bedekers argument that they had somehow relied on the conservationist's advice. The Bedekers (1) cropped the converted wetland; (2) did not plant the wetland in permanent cover; and (3) went on to convert another three acres of wetlands over the next two years. A-108-109. The hearing officer also noted that over the ensuing years, the Bedekers repeatedly, falsely certified that they were

5

complying with the wetland conservation provisions and were not converting wetlands or conducting conversion activities on areas which had not been evaluated by NRCS. *Id.*

On the minimal effects issue, the hearing officer found that the Bedekers were required to request a minimal effects determination within 30 days of the May 18, 2006 NRCS preliminary technical determination, and had failed to do so. A-109, citing 7 C.F.R. §§ 11.6(b), 12.12. Although the Bedekers had not timely raised the issue, the NRCS nevertheless conducted a minimal effects review on April 24, 2007, and found that the wetland conversion had more than a minimal effect. A-107 (FOF 18-19), 109, (citing hearing testimony and letter from NRCS biologist (A-380) discussing wetland conversion activities and their effect on the functional wetland values). Accordingly, the hearing officer found that the Bedekers had failed to carry their burden of proving that the FSA's decision was erroneous. A-109.

**NAD Director Review**

The Bedekers then appealed the hearing officer's decision to the Office of the Director of the NAD. The NAD Deputy Director reviewed the case record, the hearing testimony, and the parties' submissions, and issued a decision on September 26, 2007, upholding the hearing officer's decision. A-153-161. The Deputy Director agreed that the Bedekers had failed to prove the NRCS's wetland determination was erroneous. A-159. The NRCS acknowledged that it gave the Bedekers erroneous information when it advised them that they did not have to restore the subject wetlands to remain eligible for benefits and only had to stop converting and cropping the wetlands, but the Deputy Director agreed with the hearing officer that the Bedekers were not prejudiced by this advice because (1) they continued to crop and convert the wetlands even though they were specifically advised not

to and (2) they certified over the ensuing years that they were not converting or cropping the wetland even though they were in fact doing so. A-160-161.

The Bedekers also argued on appeal that they were denied due process during the NAD hearing because on more than one occasion, their attorney directed questions to a particular NRCS representative that were answered by a different NRCS representative. The Deputy Director reviewed the hearing testimony and found that the hearing officer had acted properly by conducting the hearing in a manner most likely to obtain relevant facts by allowing the NRCS representative who possessed the subject matter expertise or had the greater knowledge of materials or events to answer the attorney's questions, and that the Bedekers were provided "ample opportunity to question all witnesses." A-161. For these reasons, the Deputy Director found that the Bedekers had failed to prove that the hearing officer's determination was erroneous. *Id.*

**Good Faith Appeals**

The USDA afforded the Bedekers another multi-tiered hearing and appeals procedure for the Bedekers' contention that they had made a good faith attempt to follow the wetland conservation rules. First, the Grundy County COC considered the Bedekers' request for a good faith finding, and denied it in a decision issued on November 15, 2006. B-167-170. The COC found that in 1998 and 1999, the Bedekers were made aware of the prohibitions against converting wetlands and cropping converted wetlands, and that in 1998, the Bedekers were given copies of wetland inventory maps for their farm and told that no land-clearing should be completed without approval of NRCS. B-168. The COC further found that over the ensuing years, the Bedekers had repeatedly signed forms AD-1026, falsely certifying that no additional land-clearing had taken place since 1999. *Id.* Accordingly, the COC concluded that it was unable to make a good faith finding in favor of the Bedekers. *Id.*

The Bedekers appealed the Grundy County decision to the Illinois State FSA Committee, which conducted an appeal hearing on August 15, 2007. B-127-131. The Bedekers contended that they did not intend to violate the conservation provisions, that they did not receive a formal wetland delineation, that they did not recall telling NRCS that they would re-seed the cleared area in permanent cover, and that the 8.5 acre violation was small in comparison to the size of their farm. B-127. The State Committee, however, found that the Bedekers were informed of the wetlands on their property, were admonished to stop clearing or cropping the wetlands, and were not led to believe that they could continue to receive benefits if they persisted in cropping and converting their wetlands. B-128. Accordingly, the State Committee affirmed the COC's denial of the Bedekers request for good faith relief. B-129.

The Bedekers appealed the decision of the State FSA Committee to the NAD, and were afforded an evidentiary hearing on October 30, 2007. B-290. The hearing officer on this appeal of the denial of good-faith relief was a different hearing officer than presided at the Bedekers' first NAD appeal. B-69; A-110. After considering the Bedekers' evidence and arguments, the hearing officer, reciting essentially the same reasons as cited in the previous decisions, found that the FSA had acted within its discretionary authority in finding that the Bedkers had not shown an entitlement to good-faith relief. B-68.

The Bedekers then appealed the hearing officer's determination to the Office of the Director. The NAD Deputy Director reviewed the case record, the hearing testimony, and submissions from the parties, and issued a decision on February 27, 2008, upholding the hearing officer's decision and denying the Bedekers equitable relief. B-115-117. The Bedekers again made their arguments that they were unaware of the wetlands and that their violation was caused by mis-communication with

the NRCS, but the Deputy Director affirmed the hearing officer's decision that the Bedekers had failed to show that the FSA abused its discretion in denying good faith relief. The Deputy Director noted that the evidence showed that the Bedekers were told about the wetlands on their property and informed that their land clearing could make them ineligible for farm benefits. B-118. Even after being specifically admonished not to do so, the Bedekers continued to clear wetlands and plant crops in the converted wetlands, and they submitted false certifications to the contrary. *Id.* The Deputy Director concluded that the Bedekers had intentionally violated the wetlands regulations and that there was no basis to grant equitable relief. B-119.

The Bedekers then filed two lawsuits in district court, seeking judicial review of the two NAD decisions. The cases have been consolidated in this court for decision.

## Discussion

Final determinations of the National Appeals Division are subject to judicial review pursuant to 7 U.S.C. § 6999, which states that the review will be in accordance with the APA. Under the APA, the Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). The standard of review under the APA is highly deferential. A court may not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Agency action is presumed to be valid and must be upheld if there is any rational basis for it. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983); *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 290 (1974). The USDA's interpretation of the wetlands statutes it is charged with enforcing

is entitled to substantial deference. *Chevron U. S. A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations."); *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988) ("when there is no claim in this Court that the regulation violates any constitutional or statutory mandate, we are properly hesitant to substitute an alternative reading for the Secretary's unless that alternative reading is compelled by the regulation's plain [meaning]"). The Court must also defer to the agency's fact-based determinations in its own field of expertise, particularly where such determinations involve scientific judgments. Agencies must be permitted "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989). With this standard of review in mind, we turn to the arguments raised in the Bedekers' memorandum.

**I.      The Agency's Wetland Determination was Rational.**

The Bedekers' first argument, that the agency's wetland determination was against the "manifest weight of the evidence," is a non-starter. The issue is not whether the agency's decision was against the weight of the evidence, but merely whether there was a rational basis for it. *Bagdonas v. Department of Treasury,* 93 F.3d 422, 425-426 (7th Cir. 1996) ("The district court must consider the agency action valid as long as it appears from the administrative record that the decision was supported by a 'rational basis.'").

The Bedekers' argument is also fundamentally misdirected because it does not discuss or address the basis for the agency's decision. Instead, the Bedekers summarize *only* the opinions of

*their* retained witness. The Bedekers' witness expressed doubt about the accuracy of the NRCS wetland determination, but the agency found the witness not credible, based on her lack of training and certifications and her reliance on criteria which were not appropriate under the applicable regulations. A-159, 161. The Bedekers' memorandum does not even address, much less dispute the agency's stated reasons for not accepting the testimony from their witness.[2]

The Bedekers also do not discuss the NRCS wetland determination which was the basis for the NAD decision that the areas in question were wetlands, nor the NRCS hearing testimony. Congress charged the USDA with the authority to delineate, determine and certify all wetlands on farms for purposes of the wetland conservation statutes, 16 U.S.C. § 3822(a)(1), and the regulations entrust this responsibility to the NRCS. 7 C.F.R. § 12.30(a)(3). The NAD found that the NRCS had conducted a physical inspection of the farm and documented wetland hydrology, wetland flora and hydric soils in accordance with established NRCS procedure. A-107 (FOF 17), 155, 159. The agency decision on this issue is entitled to particular deference as a matter within the agency's expertise. *Marsh, supra,* 490 U.S. at 378. The Bedekers' claim that the agency failed to "clearly establish" that the area was wetland (Mem. at 8) is misdirected. This court need not conclude that the NRCS delineation "clearly established" anything. It is the Bedekers' burden to prove that it was irrational for the agency to rely on the NRCS delineation. They have not met that burden.

---

[2] The Bedekers chose not to order a transcript of the hearing, *see* 7 C.F.R. § 11.8(c)(5)(iii) (permitting any party to order transcript of NAD hearing), and the only testimony they give the court is selected quotations from the testimony of their own retained witness. The Bedekers' witness criticizes the NRCS's use of slides and reliance on existing vegetation, claiming it is impossible to determine what existed at the farm prior to the violation. Mem. at 8. But the applicable regulations *permit* the NRCS to rely on such data to determine the provenance of a disturbed wetland. 7 C.F.R. 12.31(b)(2)(ii). Further, the Bedekers' argument (Mem. at 8) that the soil maps show the area in question has the same soil as areas designated farmed *wetland* is not an argument in their favor. Wetlands, farmed or not, have hydric soil (*ie.,* soil characteristic of a wetland).

**II.     Minimal Effects**

The Bedekers next argue that they are entitled to the benefit of the minimal effects exception. Because the Bedekers failed to request a minimal effects determination before converting the wetland, the burden was on them to prove before the agency that their activities qualified for the minimal effects exception. 7 C.F.R. § 12.31(d). The issue in this court is whether there was a rational basis for the agency's decision that the Bedekers failed to meet their burden.

After the Bedekers raised the issue, an NRCS biologist conducted a review of the functions and values served by the subject Riverine system, including flood control, water quality, recharge and maintenance of stream flows, replenishment of soil moisture, nutrient cycling, carbon sequestration, sediment control, and habitat for native plants and wildlife. A-377-389. The biologist concluded that all these functions and values were significantly reduced or eliminated in the 8.5 acres of wetlands that the Bedekers converted. A-380. Some areas of the wetland were filled with up to 2 to 3 feet of soil, reducing water storage and water quality functions. *Id.* Removal of all of the native vegetation eliminated the nutrient cycling, sediment control, and species diversity functions. *Id.* Accordingly, the biologist concluded that the wetland conversion had more than a minimal effect on the wetland. *Id.* In their argument, the Bedekers merely cite the opinion of their retained expert. As on the prior issue, their argument does not reference or take into account the standard of review. It was not irrational for the agency to accept the conclusions of the NRCS biologist.

**III.    Erroneous Information**

In arguments C, E and F, the Bedekers argue that they should win because an NRCS conservationist gave them erroneous information in 1998. The legal basis for these arguments is unclear and the Bedekers cite no case authority. Argument C seems to be premised on an equitable

12

estoppel theory, but does not discuss *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990), which holds that erroneous advice given by a Government employee cannot estop the Government from denying benefits not otherwise permitted by law. Arguments E and F seem to ask the court to take a *de novo* review of the good faith issue, which, as set above, is not permitted. But in any event, there is simply no factual foundation for any equitable argument in the Bedekers' favor.

The Bedekers claim that they were told by a NRCS conservationist "that the very activities forming the basis for this matter did not constitute a violation," and that they conducted their activities "in reliance on this information." Mem. at 10. But the agency found exactly the *opposite.* A-106, 156. The agency's decision is amply supported by the record, including a December 21, 1998, letter from the NRCS to the Bedekers, which documents that the Bedekers *were* told about the wetlands on their farm ("I have enclosed copies of the wetland inventory maps for your farm"); that the Bedekers *were* told that removal of trees constituted conversion of wetlands ("From my observations, a number of trees are being cleared, stumps removed, and then burned. In reviewing USDA's wetland inventory maps, these areas are shown to be wetlands. Some of this work is being done to maintain some existing drainageways. However, some of this work also appears to be clearing of wetlands to improve drainage and possibly allow more land to be cropped. If this is actually the case, USDA views this activity as the conversion of wetlands."); and *were* told that individuals who convert wetlands are ineligible for farm benefits ("The Farm Bill of 1996 prohibits anyone converting wetlands to be eligible for any farm program payments, loans, insurance, or cost-share payments."). A-252.

The Bedekers caught a lucky break when the NRCS conservationist concluded they could maintain eligibility for benefits by keeping the cleared wetlands out of production and planting them

in permanent cover.  Based on the Bedekers' agreement to these conditions, which he documented in writing, the conservationist did not cite the Bedekers for a violation.  A-248 ("Area was converted by clearing trees in 1998.  Producer has agreed to not farm the wetland area and will plant it to permanent vegetative cover.").  This result was overly generous to the Bedekers, who could have been required to restore the wetland hydrology and vegetation to regain eligibility for benefits.

All would have been well for the Bedekers if they had abided by their agreement.  Instead, over the next two years, they cleared and converted more than three additional acres of wetland on Farm 3103 and planted crops on the cleared wetlands.  A-156, 337-338, 341.  They also converted .4 acres of wetlands on a different farm (Farm 149).  A-156, 289-290.  The NRCS did not do anything that led the Bedekers to believe that it was permissible for them to continue to convert and farm their wetlands.  The Bedekers have had at least seven hearings or appeals which have addressed this issue, and everyone to look at it has reached the same conclusion.  The Bedekers have failed to demonstrate that these findings were irrational.

## IV.  Due Process

Finally, the Bedekers argue that their Constitutional procedural due process rights were violated during the telephonic hearing when Bedekers' counsel asked a NRCS representative whether "NRCS procedures for a minimal effects evaluation" were "provided to the appellants."  Over the Bedekers' objection, the hearing officer permitted a second witness to answer that the NRCS procedures were included in the agency record.

The Bedekers do not cite any authority for their claim of a Constitutional violation, and their claim is without merit.  Due process is a flexible concept which "calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

The Constitution does not require strict rules of evidence in evidentiary hearings, permits informality, and allows a hearing officer discretion in administering a hearing. *Richardson v. Perales*, 402 U.S. 389, 400 (1971). Even in a criminal case, a trial judge has "wide latitude" to impose reasonable limits on cross-examination. *United States v. Scott*, 145 F.3d 878, 888 (7th Cir. 1998). The NAD Deputy Director properly held that the hearing officer had discretion under USDA regulations to allow the agency witness with the most knowledge on the issue to answer the question, *see* A-161, citing 7 C.F.R. § 11.8(c)(5)(ii), and the Bedekers do not cite or dispute this finding. Moreover, the Bedekers make no argument as to how they were prejudiced by a ruling allowing a witness with knowledge to testify to the easily-verifiable fact that the procedures for a minimal effects evaluation were included in the agency record. *See* A-575-601 (agency record, including minimal effects procedures).

The Bedekers make the general claim that there were other violations, but they do not cite any, so there is nothing for us to address here. *See F.T.C. v. World Media Brokers*, 415 F.3d 758, 766 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived.").

For the foregoing reasons, this court should affirm the agency's decisions.

    Respectfully submitted,

    PATRICK J. FITZGERALD
    United States Attorney

    By: s/ Jonathan C. Haile
        JONATHAN C. HAILE
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 886-2055
        jonathan.haile@usdoj.gov

### CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
DEPARTMENT OF AGRICULTURE'S ADMINISTRATIVE DECISION**

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by first-class mail on July 28, 2008, to the following non-ECF filers:

Patrick Thomas Brankin
Schain, Firsel & Burney, Ltd.
222 North LaSalle Street
Suite 1910
Chicago, IL 60601


By: s/ Jonathan C. Haile
JONATHAN C. HAILE
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-2055
jonathan.haile@usdoj.gov